**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 7, 2011

No. 09-60778

Lyle W. Cayce
Clerk

ROMMEL A. AMOS

Petitioner–Appellant

v.

JOE THORNTON

Respondent–Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:

Rommel A. Amos, a prisoner in the custody of the state of Mississippi, appeals the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Amos contends that he was denied his right to a speedy trial and that his lawyer provided ineffective assistance of counsel by failing to move for a speedy trial. The Mississippi Supreme Court determined these claims to be without merit. Because Amos cannot show that this determination was objectively unreasonable, we affirm the dismissal of his petition.

I.

Walter Vance was shot dead by Amos's hand in Holmes County, Mississippi, on Halloween night 2001. That evening, Amos and his friend Aaron

No. 09-60778

Hudson had decided to walk from Hudson's home to the home of a friend who lived nearby. On their way, they encountered a group of people that included Vance and Vance's friend Christopher Claiborne. After Vance insulted Amos's headgear, a physical altercation ensued between Vance, Claiborne, and Amos. At some point thereafter, Amos came into possession of a .22 caliber pistol. He fired five shots from it. Four of them hit Vance, causing his death.

Amos fled to Chicago the day after Vance's death. He was arrested in Chicago on December 21, 2001, under an Illinois statute that requires the arrest and extradition of any person found in Illinois who has fled from justice after being charged with a felony by another state.[1] Amos demanded a speedy trial on the day he was arrested and made two additional speedy-trial demands while he was in custody in Illinois, one on January 18, 2002, the other on January 29. Amos waived extradition and consented to be returned to Mississippi on February 6, 2002. Amos was not indicted in Mississippi until July 16, 2002; he was arrested on July 26. The record is silent as to the date on which Amos was extradited to Mississippi. Nor does the record contain any explanation for the five-month delay between Amos's waiver of extradition in Illinois and his arrest in Mississippi. Three days after his arrest, Amos filed a *pro se* motion for a speedy trial. The trial court never acted on this motion. The court initially set Amos's case for trial on February 13, 2003, but the trial was continued and did not begin until April 29, 2003. The record contains no explanation of the reasons for this two-and-a-half-month continuance. The net result, then, was that Amos was in custody for a little more than sixteen months between the time he was first arrested and the time his trial began.

At trial, Amos advanced a theory of self defense. According to Amos, after he responded angrily to Vance's insulting his headgear, Vance, Claiborne, and

---

[1] *See* 725 ILL. COMP. STAT. 225/2.

another person violently assaulted him, punching him, kicking him, and beating him with a liquor bottle. As the beating was going on, Hudson returned to his home, retrieved Amos's pistol, returned to the site of the beating, and handed the pistol to Amos, who then fired it toward his assailants. Alexis Noel, Hudson's girlfriend, also testified that Hudson retrieved the gun and then passed it to Amos while Amos was being beaten. However, Hudson denied that he retrieved the gun and brought it to Amos during the beating. Rather, Hudson testified that Amos came back to Hudson's home about five or ten minutes after the beating, retrieved the gun himself, walked back outside, and then shot Vance. Claiborne denied that he and Vance had assaulted Amos. Claiborne testified that after Vance insulted Amos, Amos became extremely angry. Vance and Claiborne shoved Amos to the ground but then helped him back up; no assault took place. Afterwards, Amos walked away, retrieved the gun from Hudson, pursued Vance and Clairbone, and shot Vance in the back. Katrina Venable, who was among the group of people Amos and Hudson encountered, corroborated Claiborne's account of the events giving rise to the shooting. The jury rejected Amos's self-defense claim and convicted him of murder. The court sentenced him to life in prison.

Amos then sought relief on both direct and collateral review. Amos alleged manifold claims for relief on his state-court direct appeal, including both of the claims at issue on this appeal. The Court of Appeals of Mississippi determined that both claims were without merit.[2] However, Amos did not petition the Mississippi Supreme Court for a writ of certiorari, so his inclusion of these claims in his direct appeal did not exhaust them for federal habeas purposes.[3] Next, Amos moved for permission to seek post-conviction relief in the Mississippi

---

[2] *See Amos v. State*, 911 So. 2d 644, 649–50 & 657 (Miss. Ct. Ap. 2005).

[3] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–47 (1999).

No. 09-60778

Supreme Court. This motion, too, alleged numerous claims for relief. The court denied the motion on the grounds that Amos's ineffective-assistance-of-counsel claims "do not pass the standard set forth in *Strickland v. Washington*" and denied the remaining claims, including the speedy-trial claim, on the alternative bases that they were procedurally barred and without merit. Amos then turned to federal district court, where he filed a habeas petition pressing twenty separate claims for relief (including an ineffective-assistance claim that identified thirty-five separate instances of allegedly ineffective representation). The district court denied the petition in its entirety. We granted a certificate of appealability on Amos's claim that he suffered a violation of his constitutional right to a speedy trial, which the district court determined was procedurally barred,[4] and on his claim that his lawyer's failure to file a motion for a speedy trial violated his right to the effective assistance of counsel, which the district court determined was without merit.

## II.

The Sixth Amendment guarantees every criminal accused "the right to a speedy . . . trial."[5] Whether a criminal defendant has been deprived of his right

---

[4] Even though the district court was correct to conclude that Amos procedurally defaulted his speedy-trial claim, *see Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999), it nonetheless erred by applying the doctrine of procedural bar. The State's response to Amos's petition did not contend that Amos had procedurally defaulted his speedy-trial claim, and we have previously held that it is an abuse of discretion for a district court to *sua sponte* apply "the procedural bar defense when the petitioner has absolutely no notice or opportunity to respond," *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006). Amos argues that we must vacate the judgment and remand this matter to the district court so that it can review his claim on the merits. Not so. An error is grounds for reversal only if it is not harmless, FED R. CIV. P. 61, and any error that does affect the losing party's substantial rights is harmless, *e.g. United States v. Guillermo Balleza*, 613 F.3d 432, 434 (5th Cir.) (per curiam), *cert. denied*, 131 S. Ct. 680 (2010). In light of our determination that Amos is not entitled to relief on his speedy-trial claim, *see infra* Section II, the district court's error in dismissing that claim as procedurally barred was harmless, and remand is unnecessary. *See generally Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000) ("[T]his Court may affirm the denial of habeas relief on any ground supported by the record.").

[5] U.S. CONST. amend VI.

No. 09-60778

to a speedy trial is a mixed question of law and fact.[6]  Under the Antiterrorism and Effective Death Penalty Act, we review a state court's resolution of a mixed question of law and fact under the deferential standard of 28 U.S.C. § 2254(d)(1).[7]  Accordingly, Amos is entitled to relief only if the state court's rejection of his speedy-trial claim resulted in a decision that was contrary to, or involved an objectively unreasonable application of, clearly established federal law as articulated in the decisions of the Supreme Court.[8]

Section 2254(d)(1) imposes a "'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."[9]  It is not enough for a petitioner to show that a state court's decision was incorrect or erroneous; he must show that the decision was objectively unreasonable, which is "a substantially higher threshold."[10]  Very few petitioners can make this showing.[11]  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond

---

[6] *United States v. Villareal*, 613 F.3d 1344, 1349 (11th Cir. 2010); *United States v. Wanigasinghe*, 545 F.3d 595, 597 (7th Cir. 2008); *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007).

[7] *E.g.*, *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008).

[8] *See Goodrum v. Quarterman*, 547 F.3d 249, 256 (5th Cir. 2008).

[9] *Cullen v. Pinholster*, 131 S. Ct. 1388, 3198 (2011) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

[10] *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

[11] *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . .   If this standard is difficult to meet, that is because it was meant to be.").

No. 09-60778

any possibility for fairminded disagreement."[12]  In assessing the reasonableness of a state court's application of clearly established federal law, our review "is limited to the record that was before the state court."[13]

Two features of AEDPA deference are particularly pertinent to our analysis of Amos's speedy-trial claim. First, this always-substantial deference is at an apex when we are reviewing a state court's application of a broad, general standard whose application "to a specific case can demand a substantial element of judgment."[14] Determining whether a defendant's speedy-trial right has been violated requires the application of just such a standard.  As the Supreme Court explained in its seminal decision in *Barker v. Wingo*, the right to a speedy trial "is a more vague concept than other procedural rights," and it is "impossible to determine with precision when the right has been denied. . . . [A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."[15]  *Barker* identified four factors that structure the inquiry into whether a defendant has been deprived of his right to a speedy trial: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant."[16]  This four-factor balancing test eschews "rigid rules" and "mechanical factor-counting" in favor of "'a difficult and sensitive balancing

---

[12] *Id.* at 786–87.

[13] *Pinholster*, 131 S. Ct. at 1398.

[14] *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

[15] *Barker v. Wingo*, 407 U.S. 514, 521–22 (1972); *see also Gray v. King*, 724 F.2d 1199, 1202 (5th Cir. 1984) ("What is acceptable in one case . . . may not be so in another; much depends on the complexity of the case.").

[16] *Goodrum*, 547 F.3d at 257 (citing *Barker*, 407 U.S. at 530).

6

No. 09-60778

process."[17] Section 2254(d)(1) thus requires us to give the widest of latitude to a state court's conduct of its speedy-trial analysis.

Second, the deference due under § 2254(d)(1) is not diminished by the fact that the Mississippi Supreme Court did not explain the reasons for its determination that Amos's claim is without merit. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."[18] To assess whether a petitioner has made this showing, we determine "what arguments or theories . . . could have supported[] the state court's decision" and then ask whether fairminded jurists could conclude that those arguments and theories are consistent with the Supreme Court's relevant teachings.[19] If there is any objectively reasonable basis on which the state court could have denied relief, AEDPA demands that we respect its decision to do so. With these guiding principles in mind, we turn to an analysis of *Barker*'s four-factor balancing test.

"*Barker*'s first factor, length of delay, performs a dual function."[20] Initially, it operates as a screening device.[21] "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold" that separates ordinary delay from "'presumptively prejudicial' delay."[22] If the accused can make this threshold showing, we next "'consider, as

---

[17] *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993) (quoting *Barker*, 407 U.S. at 533).

[18] *Richter*, 131 S. Ct. at 784.

[19] *Id.* at 786.

[20] *Nelson*, 989 F.2d at 851.

[21] *See Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

[22] *Doggett v. United States*, 505 U.S. 647, 651–52 (1992).

one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'"[23]

As to the first of these functions, we conclude that Amos has made a threshold showing of presumptively prejudicial delay. A defendant's right to a speedy trial "attaches at the time of arrest or indictment, whichever comes first."[24] The delay between arrest or indictment and trial crosses the line from "ordinary" to "presumptively prejudicial" somewhere around the one-year mark.[25] Here, a little more than sixteen months elapsed between Amos's arrest in Illinois and the beginning of his trial in Mississippi. This is sufficient to trigger the full, four-step speedy-trial inquiry under *Barker*.[26]

We turn now to the second function performed by *Barker*'s first factor, an inquiry into "the extent to which the delay extends beyond the bare minimum

---

[23] *Nelson*, 989 F.2d at 851 (quoting *Doggett*, 505 U.S. at 652).

[24] *Id; see also Robinson v. Whitley*, 2 F.3d 562, (5th Cir. 1993) ("The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first." (citing *Dillingham v. United States*, 423 U.S. 64 (1975)).

[25] *See United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003) (citing *United States v. Bergfield*, 280 F.3d 486, 488 (5th Cir. 2002)); *see also Nelson*, 989 F.2d at 851 (citing *Doggett*, 505 U.S. at 652 n.1).

[26] The State contends that Amos suffered from only an eight-month delay, reasoning that because "Mississippi lacked jurisdiction over Amos until his extradition" from Illinois, the speedy-trial clock "could not have begun to run" until Amos was indicted in July of 2002. *Amos*, 911 So. 2d at 649. However, the fact that an accused is in the custody of another sovereign does not absolve a state of its responsibility under the Speedy Trial Clause to prosecute the accused with customary dispatch. *Smith v. Hooey*, 393 U.S. 374, 377–83 (1969); *Prince v. Alabama*, 507 F.2d 693, 700–02 (5th Cir. 1975). That rule applies with particular force here, since Amos's arrest in Illinois came at Mississippi's behest, *see Amos*, 911 So.2d at 649; 725 ILL. COMP. STAT. 225/3; *supra* note 1, and there is no indication that Amos attempted to frustrate or delay his extradition, *see Braden v. Capps*, 517 F.2d 221, 223 n.4 (5th Cir. 1975); *see also United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995). Under these circumstances, Amos's right to a speedy trial attached at the time of his arrest in Illinois, and the eight months that lapsed between his arrest there and his indictment in Mississippi must be included in the calculation of the total pretrial delay. *See Smith*, 393 U.S. at 382 (criticizing a state court for "allowing doctrinaire concepts of 'power' and 'authority' to submerge the practical demands of the constitutional right to a speedy trial").

No. 09-60778

required to trigger a *Barker* analysis,"[27] which is particularly "significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time."[28] The bare minimum required to trigger a *Barker* analysis is one year.[29] A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused.[30] The delay between Amos's arrest and trial only exceeded the one-year minimum by about four months. We have previously concluded that such a delay, "[a]lthough long enough to prompt a full *Barker*-analysis," is "not long enough to weigh heavily in favor" of the accused,[31] and we see no reason to draw a different conclusion here.

Next we consider the reasons for the delay. The burden is on the Government to "assign[] reasons to justify the delay."[32] Different reasons are entitled to different weight:

> At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these

[27] *Goodrum*, 547 F.3d at 258.

[28] *Doggett*, 505 U.S. at 652.

[29] *See supra* note 18; *see also Doggett*, 500 U.S. at 658 (identifying one year as the length of delay that is "generally sufficient to trigger judicial review").

[30] *See Goodrum*, 547 F.3d at 258; *see also United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009) (collecting cases).

[31] *United States v. Frye*, 372 F.3d 729, 737 (5th Cir. 2004) (describing a post-indictment delay of "approximately 16 months"); *see also United States v. Parker*, 505 F.3d 323, 328–29 (5th Cir. 2007) ("As for length of delay, the seventeen-month period . . . does not weigh in [the accused's] favor.").

[32] *Barker*, 407 U.S. at 531; *see also United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) ("'Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner ... the burden is on the prosecution to explain the cause of the pre-trial delay.'" (quoting *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999))); *McNeely v. Balanas*, 336 F.3d 822, 827 (9th Cir. 2003) (collecting cases).

9

No. 09-60778

extremes fall unexplained or negligent delays, which weigh against the state, "but not heavily."[33]

In this case, "[a]bsolutely no reason for the delay appears in the record; there is no indication that either Amos or the State requested a continuance or otherwise caused the delay."[34] Because the delay is wholly unexplained, this factor weighs in Amos's favor, but the advantage that accrues to him is small.[35]

The third *Barker* factor asks whether the defendant "diligently asserted his speedy trial right."[36] The burden is "on the defendant to alert the government of his grievances."[37] A "'defendant's assertion of his speedy trial right' receives 'strong evidentiary weight,' while 'failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.'"[38] This factor can also cut against the defendant where there was a lengthy delay between his arrest or indictment and his assertion of his speedy-trial right.[39] Here, the record reflects that Amos timely asserted his right to a speedy trial. He initially asserted it on the day he was arrested in Illinois, and he reasserted it to the Illinois court twice over the next five weeks. After being extradited to Mississippi, his wife filed a motion that stated,"I, LaMonica Henderson on the

---

[33] *Goodrum*, 547 F.3d at 248 (footnotes and internal citation omitted) (quoting *Cowart v. Hargett*, 16 F.3d 642, 647 (1994)).

[34] *Amos*, 911 So. 2d at 649.

[35] *See Cowart*, 16 F.3d at 647.

[36] *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007).

[37] *Robinson*, 2 F.3d at 569.

[38] *Molina-Solorio*, 577 F.3d at 305 (quoting *Barker*, 407 U.S. at 531–32).

[39] *Parker*, 505 F.3d at 329–30 ("Mere assertion of the speedy trial right is not enough for this factor to weigh in a defendant's favor.  If he waits too long, his pre-assertion silence will be weighed against him.").

behalf of Rommel Amos would like to file a motion for a speedy trial."[40] She filed this motion just three days after Amos was arrested in Mississippi and less than two weeks after he was indicted. Amos's diligent, non-dilatory request for a speedy trial weighs strongly in his favor.

The fourth and final *Barker* factor is the prejudice suffered by the defendant due to the delay. "[O]rdinarily the burden is on the defendant to demonstrate actual prejudice. But where the first three factors together weigh heavily in the defendant's favor, we may conclude that they warrant a presumption of prejudice, relieving the defendant of his burden."[41] Here, although Amos's timely assertion of his right to a speedy trial weighs heavily in his favor, the unexplained reason for the delay and the relatively short length of the delay both weigh in his favor only slightly. Accordingly, no presumption of prejudice is warranted.[42] Barker thus must demonstrate that he suffered from actual prejudice. "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.'"[43]

Amos's only argument as to how he was prejudiced by the delay is that his ability to put on a defense was impaired by the fact that several witnesses' memories of the murder had faded . Our review of the trial transcript persuades

---

[40] The same day, Amos filed a signed certification stating that he granted Henderson permission to file motions on his behalf. Amos also signed the motion itself.

[41] *Molina-Solorio*, 577 F.3d at 307 (internal citation omitted).

[42] *See Goodrum*, 547 F.3d at 260 (determining that no presumption of prejudice was warranted where two of the first three *Barker* factors weighed heavily in the defendant's favor); *Charles*, 629 F.3d at 466 ("[D]elays of less than five years are insufficient, by duration alone, to give rise to a presumption of prejudice and relieve the defendant of satisfying *Barker*'s fourth prong."),

[43] *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1687 (2010).

us that this claim is unfounded. Most of what Amos points to as instances of the witnesses' faded memories are, in actuality, nothing more than instances of different witnesses having different recollections of what happened. Some witnesses remembered Amos fleeing the scene in his girlfriend's car; others testified the car was elsewhere. Amos and Noel testified that Hudson brought Amos the gun while he was on the ground being attacked; Hudson testified that Amos came to Hudson's home and got the gun after the attack concluded. All of the witnesses had slightly different memories of the precise location where the shooting took place. The mere fact that various witnesses recounted slightly different versions of what happened is not evidence that one or more of those witnesses had forgotten what happened. Such discrepancies are to be expected; the inevitable need to sort through them is one of the primary reasons for the jury-trial system. Amos offers neither argument nor evidence that, had the trial taken place sooner, all of the witnesses would have testified consistently and that this testimony that would have been more favorable to him.

In addition, several of what Amos identifies as instances of faded memory simply do not withstand close scrutiny. For example, Amos contends that Venable had forgotten whether she told the investigating officers that Vance and Claiborne had attacked Amos. But Venable testified that she had a clear and specific recollection that Vance and Claiborne did not assault Amos, that they pushed and shoved him but did not exchange blows. Amos's attorney tried to impeach Venable's recollection based on the fact that she used the word "fight" in the statement she gave police the day after the murder, but Venable insisted that her recollection had not changed and that her statement was consistent with her testimony. Amos also contends that the three investigating officers could not recall who collected the shell casings from the scene. But each of the officers testified specifically as to what role they played in the policing the scene, and their testimony was consistent.

No. 09-60778

The few genuine instances of faded memories that Amos has identified do not show that he was prejudiced by his delayed trial. "[W]hile 'faded memory may result in prejudice, we have held that in order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue.'"[44] Amos is correct that the investigating officers were unable to recall precisely how many people were on the scene when they arrived. And Clairborne could not remember the exact date on which he gave a statement to the police, exactly how many shots he heard, or how he disposed of his liquor bottle. But these collateral factual details were not material to Amos's theory of self defense. On the core issues, none of the witnesses were unable to recall what happened or testified that their memories of the murder had faded. The record does not substantiate Amos's claim that his ability to put on a defense was prejudiced by the pretrial delay.

As a result, fairminded jurists could easily conclude that Amos did not suffer a violation of his Sixth Amendment right to a speedy trial. It follows that the Mississippi Supreme Court's rejection of Amos's speedy-trial claim was neither contrary to nor involved an unreasonable application of clearly established federal law. The district court did not err by dismissing this claim.

## III.

Our disposition of Amos's speedy-trial claim forecloses relief on his claim that his lawyer rendered constitutionally ineffective assistance of counsel by failing to file a motion for a speedy trial. Section 2254(d)(1) requires us to uphold a state court's denial of an ineffective-assistance-of-counsel claim so long as that denial was not an unreasonable application of the two-pronged

---

[44] *See Jamerson v. Estelle*, 666 F.2d 241, 245 (5th Cir. 1982) (quoting *United States v. Edwards*, 577 F.2d 883, 889 (5th Cir. 1978)).

13

No. 09-60778

deficiency–prejudice standard articulated by *Strickland v. Washington*.[45] "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[46]  Specifically, where prejudice is alleged to arise from counsel's failure to file a motion, the petitioner must show there was a reasonable probability "that the trial court would have granted it, or would have reversibly erred by refusing it."[47]  If Amos's speedy-trial claim lacked merit, then he cannot show that there is a reasonable probability that a motion for a speedy trial would have been granted if his attorney had filed it.  We have already concluded that it was objectively reasonable for the state court to determine that Amos's speedy-trial claim lacked merit.  *A fortiori*, it was also objectively reasonable for that court to determine that Amos could not demonstrate that he was prejudiced by his attorney's failure to move for a speedy trial.

## IV.

For the reasons discussed above, the district court's judgment dismissing Amos's habeas petition with prejudice is AFFIRMED.

---

[45] *See Tenny v. Dretke*, 416 F.3d 404, 406 (5th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[46] *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694).

[47] *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *see also United States v. Flores-Ochoa*, 139 F.3d 1022, 1024 (5th Cir. 1998) (determining that a defendant cannot show that he was prejudiced by his counsel's "failing to move for a continuance" where "there is no evidence that the court would have granted the motion."); *United States v. Gibson*, 55 F.3d 173, 179 5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").