# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-70001

Consolidated with 19-70001

WILLIAM SPEER,

      Petitioner - Appellant

v.

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

August 17, 2020

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Eastern District of Texas
USDC 2:04-CV-269

Before JONES, STEWART, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:[*]

A jury found that while William Speer was in prison for murder, he murdered again. This time he was sentenced to death. His collateral

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-70001
Cons. w/ No. 19-70001

challenges to his conviction and death sentence have been percolating in state and federal courts for many years. He appeals the district court's rejection of his speedy trial and *Brady* claims and seeks authorization to appeal its rejection of his ineffective assistance claims. We affirm the rejection of his speedy trial and *Brady* claims, and grant a certificate of appealability on the ineffective assistance claim[**].

I.

In July 1997, Speer was serving a life sentence for capital murder. *Speer v. State*, 890 S.W.2d 87 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). While serving that sentence in Texas prison, he was charged with murdering another prisoner, Gary Dickerson. The murder was an attempt to ingratiate himself with a gang called the Texas Mafia. The leader of the gang, Michael Constandine, wanted Dickerson dead because he believed, incorrectly, that Dickerson had caused prison officials to intercept an incoming shipment of cigarettes—a valuable prison commodity. Speer volunteered for the job. He went to Dickerson's cell with Texas Mafia member Anibal Canales on the pretext of smoking a cigarette with Dickerson. But once there, Speer choked Dickerson to death while Canales restrained his arms and feet. Speer later recapped to other Texas Mafia members that he told Dickerson in his last moments, "don't fuck with the Texas Mafia, not even in hell."

It took more than two years, until November 1999, for Speer to be indicted for capital murder. And his trial did not begin for another two years. When it finally started, the prosecution primarily relied on inmate testimony that Speer had admitted—both in person and in writing—to the attack. The jury convicted Speer. After the punishment phase, the jury answered the

---

[**] Judge Jones would deny the certificate of appealability on the ineffective assistance claim.

No. 13-70001
Cons. w/ No. 19-70001

special questions in favor of death.  The Texas Court of Criminal Appeals affirmed on direct appeal.  *Speer v. State*, 2003 WL 22303983 (Tex. Crim. App. Oct. 8, 2003).

Speer next sought state postconviction relief, raising speedy trial and ineffective assistance of counsel claims.  According to Speer, his counsel was constitutionally ineffective for failing to investigate or develop mitigation evidence.  And Speer's right to a speedy trial was violated, he argued, because of the nearly two-year delay in trying him after the indictment issued.

The trial judge concluded that neither Sixth Amendment right had been violated, finding, among other things, that:

- Speer's trial counsel had interviewed prospective witnesses for mitigation purposes and had presented mitigating evidence during trial;

- the State did not deliberately attempt to delay trial; and

- Speer—who was already incarcerated—suffered no prejudice from the delay and asserted the speedy trial right only in a motion to dismiss that was filed two months before trial.

Adopting those findings, the Texas Court of Criminal Appeals denied relief.  *Ex parte Speer*, 2004 WL 7330992 (Tex. Crim. App. June 30, 2004) (per curiam).

Speer then filed a federal habeas petition based on the same claims.  Three years later, he moved the district court for a stay so he could seek state habeas relief on an alleged *Brady* violation.  The district court granted the motion, and Speer filed a second habeas petition in state court.

After the state trial judge denied relief on the *Brady* claim, the Texas Court of Criminal Appeals remanded the petition for a determination of "whether [a] factual basis for the [*Brady*] claim was unavailable on the date that [Speer] filed his previous application."  *Ex parte Speer*, 2008 WL 4803515, at *1 (Tex. Crim. App. Nov. 5, 2008) (per curiam).  On remand, the trial judge

No. 13-70001
Cons. w/ No. 19-70001

examined each document that Speer claimed the State had withheld, finding that:

- Speer's trial counsel had access to all but three exhibits alleged to be *Brady* material;

- every document, including the three that were withheld during trial, was available to Speer's habeas counsel when Speer first applied for postconviction relief; and

- Speer's habeas counsel asked the State to produce, but "made no attempts to view[,] the prosecutor's trial file."

Relying on those findings, the Texas Court of Criminal Appeals dismissed Speer's second petition because he could have—but did not—raise the *Brady* claim in his initial state habeas application, which constitutes an "abuse of the writ" under Texas law. *Ex parte Speer*, 2010 WL 724430, at *1 (Tex. Crim. App. Mar. 3, 2010) (per curiam); *see* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a).

Back in federal court, Speer filed an amended habeas petition. The district court referred the petition to a magistrate judge who recommended that each claim be denied—the *Brady* claim because of procedural default, and the other two on the merits. The district court adopted the magistrate judge's recommendation, granted Speer's request for a certificate of appealability on his speedy trial and *Brady* claims, and entered final judgment. Speer appealed. But he challenged only the district court's speedy trial and *Brady* decisions; he did not seek a certificate of appealability on his ineffective assistance claim.

During the lengthy federal habeas proceeding, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). Those decisions meant that in Texas, ineffective assistance of habeas counsel could now qualify as cause to overcome a procedural default. *See Trevino*, 569 U.S. at 429; *Martinez*, 566 U.S. at 17–18. Speer's counsel thus

4

No. 13-70001
Cons. w/ No. 19-70001

asked to withdraw, arguing that it would be a conflict of interest for him to evaluate whether his state habeas representation was ineffective. Another panel of this court denied the withdrawal motion but directed the district court to appoint "supplemental counsel for the sole purpose of determining whether Speer has additional habeas claims that ought to have been brought" under *Martinez* and *Trevino.* *Speer v. Stephens*, 781 F.3d 784, 786 (5th Cir. 2015). To that end, and without resolving any of Speer's pending claims, we remanded the petition for the district court "to consider in the first instance whether Speer [could] establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims[,] . . . and if so, whether those claims merit relief." *Id.* at 787.

On remand, the magistrate judge appointed supplemental counsel and authorized funding for Speer to conduct a mitigation investigation. Armed with those resources, Speer developed new evidence and submitted a brief that enhanced his prior ineffective assistance claim concerning the failure to discover or introduce mitigating evidence. The magistrate judge recommended that relief be denied because, even considering his new evidence, Speer did not suffer prejudice as a result of the allegedly deficient representation. That meant he could not excuse a procedural default of the ineffective-assistance claim and the claim also failed on the merits. The district court agreed and dismissed the petition with prejudice. It also declined to authorize an appeal on the ineffective assistance claim.

The upshot of this convoluted procedural history is that we have the following matters before us on the two appeals, which we have consolidated: 1) an appeal from the denial of speedy trial claim; 2) an appeal from the denial of the *Brady* claim; 3) a request to authorize an appeal on the ineffective

No. 13-70001
Cons. w/ No. 19-70001

assistance claim; and 4) an appeal from the denial of additional funding and a hearing on the ineffective assistance claim.

## II.

We begin with Speer's speedy trial claim. Because the state court denied it on the merits, our review is limited to whether that ruling was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court law.[1] 28 U.S.C. § 2254(d)(1). This highly deferential standard of review is even more difficult to overcome when the claim involves "a broad, general standard whose application to a specific case can demand a substantial element of judgment." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (per curiam) (quotations omitted). The right to a speedy trial, which requires the balancing of various factors, is that type of judgment-laden inquiry. *Id.*

The Sixth Amendment guarantees criminal defendants "the right to a speedy and public trial." U.S. CONST. amend. VI. Because that right is "amorphous," "imprecis[e]," "necessarily relative," and "slippery," the Supreme Court established "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 522, 529–30 (1972). Relevant factors include the length of the delay, the reason for it, the defendant's diligence in asserting the right, and whether the delay prejudiced the defendant. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

But before getting to a *Barker* balancing, the defendant must make a threshold showing that the delay—measured from the date of arrest or indictment, whichever was first, *Amos*, 646 F.3d at 206—is "presumptively prejudicial." *Barker*, 407 U.S. at 530. A delay approaching one year satisfies

---

[1] Section 2254(d)(2) also entitles a habeas petitioner to relief if a state court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1). But Speer does not challenge the Texas Court of Criminal Appeals' factual resolutions related to this claim.

that benchmark. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). That means, as the state court found, that the nearly two-year lag between Speer's indictment and trial warrants consideration of the *Barker* factors.

The length of the delay does not just trigger the balancing test, it is also a factor in it. *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009) ("The longer the delay[,] . . . the heavier this factor weighs in a defendant's favor . . . ."). The state court reasonably determined that the roughly two-year delay weighs in favor of a speedy trial violation but not heavily so. *Amos*, 646 F.3d at 206–07 (noting a delay of 30 months strongly favors the accused).

As for cause, the state court found that there was no intentional delay by the state though it also did not find that the state had a good reason—like locating a witness—for the delay. This "middle ground" of negligent delay weighs slightly in Speer's favor. *Doggett*, 505 U.S. at 656–57; *see also Amos*, 646 F.3d at 207 ("Because the delay is wholly unexplained, this factor weighs in Amos's favor, but the advantage that accrues to him is small.").

While the first two factors tip slightly in Speer's favor, the state court correctly recognized that the third factor—his timeliness in asserting the right—weighs strongly against him. Speer waited nearly 22 months to raise a speedy trial concern, well beyond the delay in other cases where we have found this factor to weight against the defendant.[2] *E.g.*, *Divers v. Cain*, 698 F.3d 211, 219 (5th Cir. 2012) (17 months); *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993) (12 months). Once Speer mentioned the speedy trial right in a motion to dismiss, the court sprung into action with a hearing just three days later and trial less than two months later. The other problem for Speer is the form his speedy trial objection took. We have long warned that a motion to dismiss, as

---

[2] He blames this late assertion of the right on the delay it took to appoint counsel. But his trial counsel was appointed in March 2000, 17 months before the filing of the motion to dismiss.

opposed to a request for a prompt trial, is "not a valid demand for a speedy trial." *Cowart v. Hargett,* 16 F.3d 642, 647 (5th Cir. 1994); *see also United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) ("A motion to dismiss the indictment, particularly when, as here, it is filed over two years after the indictment, is not evidence of a [desire to be tried promptly.]"). Speer's lack of diligence in asserting the right, and the form in which he finally did assert it, thus weighs against a speedy trial violation.

As for the final factor, the state court found that Speer did not suffer prejudice from the delay. *See also United States v. Bishop*, 629 F.3d 462, 465 (5th Cir. 2010) (recognizing that a defendant must show "actual prejudice" when the first three factors do not strongly weigh in favor of a constitutional violation); *see also Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008) (declining to presume prejudice when two of the first three factors strongly favored the defendant). Speer raises arguments that at most show this factor could go either way; he does not show—as he must under AEDPA—that the state court's assessment was unreasonable. Prejudice may mean "oppressive" pretrial detention, "anxiety" arising from delay, or an "impaired" defense. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Speer argues that he suffered each form of prejudice, beginning with his transfer from the general prison population to administrative segregation soon after Dickerson's murder. But Speer was placed in segregation for "disciplinary purposes," not because he was indicted. *Speer*, 2003 WL 22303983, at *3. He also relies on that segregation for his "enhanced" anxiety attributable to the delay, but "generalized expressions of anxiety and concern

amount to little more than a nominal showing of prejudice." *Goodrum*, 547 F.3d at 263.

That leaves the heart of the prejudice inquiry: whether the nearly two-year delay impaired Speer's defense. According to Speer, a critical witness known only as "Ellis"—an inmate who gave the prosecution an incriminating letter—was out of prison and could not be located when trial started. Without explaining why, Speer claims that the witness's unavailability "greatly prejudiced [his] ability to mount an effective defense." It is Speer's burden to explain how that witness's testimony "would have materially aided his case." *Turner v. Estelle*, 515 F.2d 853, 860 (5th Cir. 1975). He does not try to do so by contending that the witness would have contradicted the other inmates' testimony that Speer authored the incriminating letter. Indeed, the very opposite could have been true: the witness could have confirmed that Speer wrote the letter. At most, Speer has shown that he might have been prejudiced by the witness's unavailability. The possibility of prejudice is not enough, *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986), especially when Speer has the AEDPA burden of showing that the state court could not have reasonably ruled against him.

The AEDPA relitigation bar dictates the outcome of this speedy trial claim. Even if Speer can show that the state court could have ruled in his favor as a de novo matter, he has not come close to showing that its balancing of the speedy trial factors to reach the opposite outcome was unreasonable. As a result, a federal court cannot grant relief on this claim.

III.

Speer also argues that he is entitled to habeas relief because the prosecution suppressed impeachment evidence. The evidence relates to Bruce Innes, a fellow inmate and Texas Mafia member. Innes gave prosecutors

incriminating letters from Speer and testified that Speer admitted to killing Dickerson. Speer argues that the prosecution suppressed documents that could have impeached Innes.

Recall that Speer did not pursue this claim until a successive state habeas application. After obtaining trial court findings on the availability of the *Brady* claim in earlier proceedings, the Texas Court of Criminal Appeals rejected this claim under the state's abuse-of-the-write rule. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a)(1). That determination is an "independent and adequate" state ground for rejection of the federal claim that we must honor unless Speer can show cause and prejudice to overcome the procedural bar. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For *Brady* claims, the cause and prejudice inquiries largely parallel the merits. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Speer can show "cause" if "the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Id.* And he can show "prejudice" if "the suppressed evidence is 'material' for *Brady* purposes." *Id.*

We conclude that even if Speer can show cause—that is, suppression of impeachment evidence—he cannot show prejudice. Impeachment evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). We do not consider the suppressed evidence in a vacuum. Instead, its materiality "depends almost entirely on the value of the [undisclosed] evidence relative to the other evidence mustered by the [S]tate." *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) (quotations omitted). Evidence that "provides only incremental impeachment value . . . does not rise to the level of *Brady* materiality." *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005).

The state court found that only the following three pieces of evidence were suppressed:

1. an investigator's notes detailing actions that Innes took to help investigators obtain evidence against Speer;

2. an investigator's letter to a correctional officer saying that Innes was, among other things, assisting with the Dickerson investigation, corresponding with the investigator, and providing information about Texas Mafia activities; and

3. Innes's letter to an investigator attaching correspondence from one of Speer's codefendants and asking to be released from administrative segregation into the general prison population.

Speer's problem is that his trial counsel had ample other evidence that revealed even greater concerns with Innes's credibility: Innes received "sweetheart" plea deals in exchange for his testimony against Speer, he communicated with other witnesses, and he had investigators request improvements in his prison conditions and a transfer to another facility. Prosecutors fronted some of these benefits on direct examination. So the suppressed documents were, at most, "of marginal value to the defense and . . . cumulative with already presented impeachment evidence." *Murphy v. Davis*, 901 F.3d 578, 598 (5th Cir. 2018). And given that four other inmates corroborated Innes's testimony, there is not a reasonable probability that the marginally incremental impeachment value of the suppressed information would have changed the outcome. *See Bagley*, 473 U.S. at 682. The district court correctly rejected this claim.

IV.

That brings us to the ineffective assistance claim that was the subject of our earlier remand. Unlike the two we just addressed, this claim is only at the certificate of appealability stage. An appeal should be authorized if "the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2). That means reasonable jurists "could disagree" with the district court's analysis or could conclude the issues otherwise "deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In a capital case, any doubt is resolved in favor of granting a COA. *Hughes v. Dretke*, 412 F.3d 582, 588 (5th Cir. 2005).

Given that any doubts should be resolved in favor of authorizing an appeal, we will grant a COA on the ineffective assistance claim. It involves difficult procedural questions given the unusual remand the prior panel ordered. The district court's ground for rejecting the claim—that Speer could not show prejudice to overcome a procedural default of the claim—is also at least debatable given that the prejudice inquiry asks whether "at least one juror would have struck a different balance" at the sentencing phase had it heard the mitigating evidence counsel did not present. *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

Speer also appeals two issues relating to this claim that do not require a COA: the level of funding and the lack of an evidentiary hearing. *See Norman v. Stephens*, 817 F.3d 226, 234 (5th Cir. 2016) (no COA needed to appeal denial of a hearing); *Barraza v. Cockrell*, 330 F.3d 349, 351 (5th Cir. 2003) (no COA needed to challenge funding). Because of the potential overlap of these issues with the merits ruling on the ineffective assistance claim, we will decide these issues when we resolve the underlying claim.

\* \* \*

We AFFIRM the denial of habeas relief on the speedy trial and *Brady* claims. We GRANT a COA authorizing an appeal of the ineffective assistance claim.