# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 8, 2023

Lyle W. Cayce
Clerk

No. 21-40592

United States of America,

*Plaintiff—Appellee*,

*versus*

Reginald Stanly Strother,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:19-CR-84-1

Before Wiener, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

While Reginald Stanly Strother was serving a life sentence for a drug offense, he attempted to file fraudulent retaliatory liens against the judge who sentenced him and enlisted his elderly mother for help. A jury convicted Strother of filing false retaliatory liens against a federal judge, mail fraud, and related counts. He now appeals.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-40592

Strother also has a pending motion for leave to file attachments to his reply brief. We AFFIRM the district court's judgment and DENY the motion.

I

In 2008, Strother was convicted of a drug-trafficking offense for which he is serving a life sentence. United States Federal District Judge Marcia Crone presided over his case. We affirmed his conviction on direct appeal. *United States v. Strother*, 387 F. App'x 508 (5th Cir. 2010) (per curiam).

In 2013, the Jefferson County Clerk's Office received a suspicious document titled "Claim of Lien" via certified mail. It listed Marcia A. Crone as the debtor and Reginald Stanly Strother as the requestor. Clerk's Deputy Theresa Goodness reviewed the document and noticed several red flags. First, she knew Marcia Crone was a federal judge. And although the document claimed to be a "voluntary agreement," it did not have Judge Crone's notarized signature, which Goodness testified would be present if Judge Crone consented to the lien. Second, the document claimed that the lien arose out of Judge Crone's "violation of oath of office and unlawful acts committed against the liberty interest of Reginald S. Strother" and that it was filed under the California Civil Code and "the fundamental commercial law that has existed nearly 2000 years." Additionally, for the alleged violations, Strother sought a total of $50 million, an unusually large amount. Third, and finally, nothing suggested that a court issued the lien or that the lien arose from a judgment.

The clerk's office also received a second document from Strother, titled "Notice of Default." The document said that Strother served Marcia Crone, debtor, with notice of her unconstitutional acts and that she had thirty days to remedy the $50 million default. Strother was listed as the sender. His return address was a P.O. Box in Pollock, Louisiana, where he was then

incarcerated. Strother's handwritten notes, which instructed his mother on filing his lien, were also included with the documents he sent to the clerk's office. After noticing the irregularities in Strother's documents, the clerk's office contacted the FBI.

Strother attempted to file the liens three times. Each time, the clerk's office declined to file them. As a result, Strother filed three lawsuits against the clerk's office employees. He filed one suit against Goodness and two against Carolyn Guidry, another employee.

On June 5, 2019, the Government indicted Strother for conspiring and attempting to file a false and retaliatory lien against Judge Crone's residence, conspiring to commit mail fraud, and mail fraud.

Trial began on September 29, 2020. Strother did not present a defense. A jury convicted him on all counts. He timely appealed and is proceeding pro se, as he did at trial. Accordingly, we construe his arguments liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (per curiam).

## II

Strother makes five arguments on appeal: (1) that his Sixth Amendment right to a speedy trial was violated; (2) that the district court failed to correct the trial record; (3) that the district court improperly admitted witness testimony; (4) that the evidence of his fraudulent lawsuits was legally insufficient to convict him of mail fraud; and (5) that the indictment was constructively amended by the evidence at trial. None have merit.

## A

First, Strother's Sixth Amendment claim. Strother contends the Government violated his right to a speedy trial because its delay resulted in

the faded memory of his only witness. Strother raises this constitutional claim for the first time on appeal, so we review it for plain error.[1] *See United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009).

To determine whether a defendant has been deprived of his right to a speedy trial, we evaluate four factors set out by *Barker v. Wingo*: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

"The first factor 'is a triggering mechanism for determining whether the court is required to balance the remaining three *Barker* factors.'" *United States v. Scully*, 951 F.3d 656, 669 (5th Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003)). To trigger a speedy trial analysis, Strother "'must allege that the interval between accusation and trial has crossed the threshold' that separates ordinary delay from 'presumptively prejudicial delay.'" *Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011) (per curiam) (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)).

Because more than one year elapsed between Strother's indictment and his trial, we analyze all three factors. *See id.* ("The bare minimum required to trigger a *Barker* analysis is one year."). But the delay was only fifteen months, so this factor does not strongly favor Strother. *Id.* at 206–07

---

[1] In the district court, Strother moved to dismiss his indictment under the Speedy Trial Act. The district court denied this motion, but Strother does not challenge that denial on appeal. *See United States v. Molina-Solorio*, 577 F.3d 300, 304 n.2 (5th Cir. 2009) ("A claim under the Speedy Trial Act differs in some significant ways from a claim under the Sixth Amendment speedy trial clause." (alterations omitted) (citation omitted)).

No. 21-40592

("A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused.").

We next consider the reasons for the delay. We assign different weights to different reasons. *See Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense [is] weighted heavily against the government." *Id.* Neutral reasons, such as court overcrowding, are "weighted less heavily." *Id.* "Valid reasons . . . justify the delay and will not be weighed against the government." *United States v. Frye*, 489 F.3d 201, 210 (5th Cir. 2007); *Barker*, 407 U.S. at 531.

Here, the delay resulted from Strother's competency evaluation, COVID-19 court closures, and Strother's numerous pretrial motions. The COVID-19 continuance is a neutral reason that weighs in Strother's favor, but not heavily. *See Barker*, 407 U.S. at 531. The other two reasons do not weigh in his favor. As to the competency proceedings, Strother merely asserts that the competency evaluation was "absurd" and "foolish." The record does not support this conclusory argument and does not show that the magistrate judge abused his discretion in ordering the competency evaluation. *United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995) ("Whether 'reasonable cause' exists to put the court on notice that the defendant might be mentally incompetent is left to the sound discretion of the district court."). After determining that Strother was competent to stand trial, the magistrate judge noted that, as of July 16, 2020, Strother had filed over forty pro se pretrial motions that sought relief ranging from discovery to substantive challenges to the indictment. So this reason does not weigh in his favor. *See United States v. Wyers*, 546 F.2d 599, 602 (5th Cir. 1977).

As to the third factor, because Strother asserted his right to a speedy trial in a motion for dismissal, this factor does not weigh in his favor. *See Frye*,

No. 21-40592

489 F.3d at 211–12 ("A motion for dismissal is not evidence that the defendant wants to be tried promptly."); *Barker*, 407 U.S. at 534–35.

Finally, prejudice. Because the first three factors, on the whole, do not heavily favor Strother, he has the burden of showing actual prejudice. *See Serna-Villarreal*, 352 F.3d at 230–31 (citing *Doggett*, 505 U.S. at 658). "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.'" *Amos*, 646 F.3d at 208 (quoting *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009)). Strother contends that he met this burden because his only witness's memory was impaired by the passage of time, thus impairing his defense. His argument is unavailing.

"[W]hile 'faded memory may result in prejudice . . . . to constitute a speedy trial violation, the faded memory must substantially relate to a material issue." *United States v. Crosby*, 713 F.2d 1066, 1079 (5th Cir. 1983) (alteration in original) (quoting *Jamerson v. Estelle*, 666 F.2d 241 (5th Cir. 1982)). Here, it does not. Strother attempted to call FBI Special Agent Olivia Alley as his sole witness. The Government objected to her testimony, arguing that she had no knowledge of the lien. The court allowed her to testify outside the presence of the jury. Special Agent Alley's brief testimony confirmed she knew nothing about the liens. Although she testified that she interviewed Strother in 2015 to ask him to stop filing the liens, she was not investigating the liens and knew nothing about their contents.

Strother's prejudice argument rests on one question he was not allowed to ask Special Agent Alley: "Do you remember me asking you if you had any evidence that the lien was false at that time?" The district court upheld the Government's objection to this question, ruling that Strother was trying to get his own statement into evidence without taking the stand

6

himself. Strother said he had no further questions and agreed that Special Agent Alley could be excused. Thus, even if Special Agent Alley knew the answer to Strother's question, her testimony would not have been admissible. Strother has not shown actual prejudice.

We conclude that Strother has not shown that he was denied his Sixth Amendment right to a speedy trial.

B

In a related challenge, Strother alleges that the district court erred by failing to correct the trial record under Federal Rule of Appellate Procedure 10(e).

Rule 10(e)(1) provides that "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Fed. R. App. P. 10(e)(1). Strother moved to settle the record under Rule 10(e) in the district court, claiming that the transcript omitted Special Agent Alley's response to his question about whether she remembered telling him that she did not have any information that his lien was false.

After Strother filed his reply brief in this court, the district court issued an order denying Strother's motion to correct the record, stating that it had conducted an *in camera* review of the audio recording from trial and found no discrepancies in the transcript. We take judicial notice of the district court's ruling. *United States v. Brandon*, 965 F.3d 427, 430 n.1 (5th Cir. 2020) ("[W]e may take judicial notice of . . . matters of public record." (alteration in original) (citation omitted)). And we find no error in the district court's denial of Strother's motion. *See United States v. Smith*, 493 F.2d 906, 907 (5th Cir. 1974) (per curiam) ("Rule 10(e) exists to allow the district court to conform the record to what happened, not to what did not."). Although

Rule 10(e)(2) allows us to independently correct the record, we find no basis to do so.

Strother has moved this court for leave to file exhibits to his reply brief, which include the digital audio recordings of the trial. In light of the district court's order, the motion is DENIED. Strother's motion is also DENIED in all other respects. He makes no argument for the only attachment that is not already part of the record.

## C

Next, Strother contends that the district court erred in denying his motion to exclude Special Agent Michael Collier's testimony under Federal Rules of Evidence 602 and 701. We review the district court's evidentiary rulings for abuse of discretion, subject to harmless-error analysis. *United States v. Akins*, 746 F.3d 590, 598 (5th Cir. 2014).

Strother argues that, because Special Agent Collier lacked personal knowledge about Strother's 2008 drug case, he could not testify to whether the claims in Strother's liens were false. Strother argues that only three people could testify about the liens: Robert Strause, the officer who Strother alleges filed a complaint against him; Magistrate Judge Earl Hines; and Judge Crone. This argument is meritless. Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. The Government met this burden. Special Agent Collier testified that, in 2014, he began investigating Strother's filings, which he received from Goodness. His testimony was based on his personal knowledge of his investigation of Strother's criminal conduct.

Strother next argues that Special Agent Collier's testimony that the documents were "fraudulent" was an impermissible legal conclusion. Under Rule 701, a non-expert witness may offer opinion testimony so long as it is

No. 21-40592

"(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Lay witnesses are generally not allowed to give legal opinions. *See United States v. El-Mezain*, 664 F.3d 467, 514 (5th Cir. 2011).

Most of Special Agent Collier's testimony was based on his own perceptions and involvement in the investigation of Strother's liens. *Cf. Akins*, 746 F.3d at 598. But even if we assumed that the district court erred in admitting portions of Special Agent Collier's testimony, his reference to the documents as "fraudulent" was harmless because the Government presented overwhelming evidence of the documents' falsity and Strother's guilt. *See United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995). Judge Crone testified that she never consented to any lien drawn up by Strother. Indeed, she had never consented to a lien on her property other than her mortgage. No evidence of Judge Crone's consent to the lien was presented at trial. Goodness testified that Judge Crone never came in to notarize the documents or told the clerk that she consented. Goodness also testified to a number of red flags with Strother's lien, which prompted her to forward it to the FBI. She said that Strother's documents resembled those that the FBI warned the clerk's office to look out for.

D

Next, Strother contends that we must reverse his three convictions for mail fraud because each count was based on Strother's lawsuits. We liberally construe his argument as challenging the legal sufficiency of his conviction. Strother moved for acquittal after the Government rested, so he has preserved this claim. We review this issue de novo. *United States v.*

*Phillips*, 219 F.3d 404, 409 (5th Cir. 2000) ("We review questions of law and application of statutes de novo.").

Relying on *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002), Strother argues that filing lawsuits "is an ordinary litigation practice" that cannot be criminalized. His conviction, he contends, "undermine[s] the policies of access and finality that animate our legal system." *Id.* at 1208. In *Pendergraft*, the defendants were charged with mail fraud for attaching false affidavits to a motion for a preliminary injunction. *Id.* The indictment alleged that the affidavits and motion were filed in furtherance of a scheme to extort a settlement. *Id.* Although the court expressed a policy concern that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system," it held that the false affidavits did not constitute mail fraud because there was no intent to deceive or scheme to defraud—the defendants knew the affidavits would not deceive the recipient. *Id.*; *see United States v. Lee*, 427 F.3d 881, 889–91 (11th Cir. 2005) (distinguishing *Pendergraft* and noting its policy concerns "were simply dicta"); *see also United States v. Cuya*, 724 F. App'x 720, 724 (11th Cir. 2018) (per curiam) (citing *Lee*, 427 F.3d at 724).

In *Snow Ingredients, Inc. v. SnoWizard, Inc.*, we said that in the civil-RICO context, *absent evidence of corruption or criminal activity*, we agreed with our sister circuit about the policy concerns underlying the prosecution of litigation activities. 833 F.3d 512, 525 (5th Cir. 2016) (citing *Pendergraft*, 297 F.3d at 1208). But here, there is ample evidence of corruption or criminal activity. The Government was required to prove "(1) a scheme to defraud; (2) the use of the mails to execute the scheme; and (3) the specific intent to defraud." *United States v. Traxler*, 764 F.3d 486, 488 (5th Cir. 2014). It was undisputed that Strother used the mails. The evidence showed that Strother and his mother participated in a scheme to file fraudulent liens against Judge Crone in retaliation for his sentence. In furtherance of the scheme, Strother

No. 21-40592

sued the clerk's office employees to induce them to file the false liens, seeking hundreds of thousands of dollars in damages. The jury determined that these documents were mailed with the intent to defraud the clerk's office into filing his fraudulent liens. We conclude the evidence is sufficient to sustain his convictions.

E

Finally, Strother argues that Count Three of the indictment was constructively amended at trial by the admission of "evidence of a general warranty deed" that was not alleged in the indictment. We review this issue de novo.[2] *United States v. Thompson*, 647 F.3d 180, 183 (5th Cir. 2011).

"The Fifth Amendment 'guarantees criminal defendants a right to be tried solely on allegations in an indictment returned by the grand jury.'" *United States v. Chaker*, 820 F.3d 204, 210 (5th Cir. 2016) (citation omitted); *Stirone v. United States*, 361 U.S. 212, 215–18 (1960). Only the grand jury may broaden or modify an indictment. *Thompson*, 647 F.3d at 184. "Not all variations between allegation and proof, however, rise to the level of a constructive amendment . . . ." *Id.* An indictment is constructively amended when "the court 'permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged' or upon 'a materially different theory or set of facts than that which [the defendant]

---

[2] The Government asserts that Strother did not raise this issue in the district court, so plain-error review applies. Strother contends that he raised his argument in a motion to suppress evidence relating to the general warranty deed. In his motion, Strother argued that the evidence of the general warranty deed was irrelevant to the foreclosure sale and should be suppressed "to avoid a possible conviction for an offense not charged in the indictment." The district court denied the motion. We need not resolve this issue because his claim fails even under de novo review.

was charged.'" *Chaker*, 820 F.3d at 210 (alteration in original) (quoting *United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010)).

Count Three of the indictment charged Strother with filing false retaliatory liens. It alleged that he attempted to file a "Notice of Foreclosure Sale," which listed Judge Crone as the debtor and stated that her property in Beaumont, Texas, would be "sold at auction to the highest bidder on the steps of the Los Angeles County Courthouse in California." At trial, the jury heard a recording of a phone call in which Strother instructed his mother to file a warranty deed in his name after the foreclosure sale. He contends that the mention of the warranty deed was a constructive amendment because the deed was not mentioned in the indictment.

Mention of the general warranty deed neither modified an essential element of mail fraud nor allowed the jury to convict Strother on a materially different theory or set of facts. *See Chaker*, 820 F.3d at 210. The evidence showed that Strother mailed the notice of foreclosure sale to the clerk's office and that Strother instructed his co-conspirator to file the warranty deed in his name after the foreclosure sale. Thus, the warranty deed was merely the final completion of the foreclosure process, not an amendment to the indictment for which the jury convicted Strother on an alternate basis. *Cf. Thompson*, 647 F.3d at 184.

The judgment is AFFIRMED.