# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2023

Lyle W. Cayce
Clerk

No. 21-60344

---

Sedrick D. Russell,

*Petitioner—Appellee*,

*versus*

J. Denmark,

*Respondent—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:14-cv-225

---

Before Clement, Duncan, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Sedrick Russell, Mississippi prisoner #145868, was arrested on December 21, 2006.[1] Eight months later, he was indicted by a grand jury on charges of aggravated assault with a firearm and possession of a firearm by a convicted felon. In January 2009, he was tried in state court, and a jury found him guilty on both counts. Sentenced as a habitual offender, he received two

---

[1] The record contains several different spellings of Russell's first name, but he clarified in the district court that it is spelled "Sedrick." The Mississippi Department of Corrections spells his first name "Cedric."

concurrent life sentences without the possibility of parole. Russell unsuccessfully pursued post-conviction relief in state court. After exhausting state-court review, Russell filed a federal habeas petition, which the district court granted. The State now appeals that ruling.

In this appeal, we consider Russell's federal habeas claims that his conviction violated his right to a speedy trial, and that his public defenders provided ineffective assistance of counsel. While two state courts rejected these claims, the federal district court disagreed and held that relief was warranted. Because the district court "fail[ed] to accord required deference to the decision of a state court," *Harrington v. Richter*, 562 U.S. 86, 92 (2011), we reverse and render.

## I.

On the evening of December 19, 2006, Michael Porter visited his girlfriend Lawanda Hawkins's home in Jackson, Mississippi. Hawkins's cousin, Sedrick Russell, was also there. Sometime between 9:00 and 11:00 p.m., Porter walked outside to retrieve a bottle of gin from his car. Russell, who had earlier been following Porter around the house, closely trailed him as he went outside. While Porter leaned down to reach into his car for the liquor, he was shot twice from behind in the leg with a 9mm pistol. No one saw who shot Porter. But witnesses saw Russell walk out of the house "right behind" Porter. And earlier that evening, Porter had noticed a 9mm pistol in Russell's pocket.

Russell denied that he shot Porter. Instead, Russell maintained that he had left the Hawkins home by the time Porter was shot, picked up by a friend known only as "Ron Ron."

Two days after the shooting, Russell was arrested for the crime. At his initial appearance, the state circuit court appointed the Hinds County Public Defender's Office to represent him. Russell was held without bail at

the Hinds County Detention Center.  At his preliminary hearing in January 2007, public defender Beth Davis represented him.[2]  In August 2007, he was indicted by a grand jury on two charges:  aggravated assault and possession of a firearm by a convicted felon.  Months before, though, Russell had begun filing pro se motions asserting that his right to a speedy trial was being violated.

Davis appeared on Russell's behalf only at his preliminary hearing. Sometime thereafter, Frank McWilliams, another Hinds County public defender, took over Russell's case.  McWilliams filed two boilerplate requests for discovery, appeared for Russell at his arraignment in November 2007, and apparently later attempted to negotiate a plea agreement for Russell.  There is no evidence in the record of any other actions taken by McWilliams on Russell's behalf.

At his arraignment, Russell's trial date was set for March 24, 2008.  In December 2007, Russell filed a pro se motion to dismiss for lack of a speedy trial.  The state trial court denied the motion, finding that Russell's scheduled trial date met state statutory requirements.[3]  Nevertheless, "[i]n view of" Russell's motion, the court moved his trial date up to February 11, 2008.  Unsatisfied, Russell filed several more motions objecting to the delay.

---

[2] Russell contends that he told Davis about "Ron Ron," but she told him the conversation could wait until after the preliminary hearing.

[3] Mississippi law requires that "all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."  MISS. CODE ANN. § 99-17-1.  The statute includes a good-cause exception that applies when "a continuance [is] duly granted by the court."  *Id.*  Russell relied on this statutory 270-day requirement in his initial pro se motion.  He does not reassert a state statutory speedy-trial claim here.

No. 21-60344

Russell's trial did not occur that February as scheduled.[4]  Three days after the scheduled trial date, the court "relieved" the Hinds County Public Defender's Office of representing Russell and appointed attorney Don Boykin to represent him.[5]  Russell and Boykin met two weeks later, and Boykin promptly filed several motions on Russell's behalf.  Boykin also informed prosecutors of Russell's purported alibi witness "Ron Ron," whom Boykin was attempting to locate.  Despite Boykin's appointment and subsequent efforts, Russell continued to file frequent pro se motions.

Not long after his appointment, Boykin requested a psychiatric exam for Russell.  He contended that an exam was needed before the case could proceed because of a letter Russell allegedly sent to Porter, "say[ing] some very strange things about hearing voices[.]"  Russell objected to the exam, arguing that he "believe[d] that the reason for the psychiatric examination by court order [was] to justify denying [his] right to a speedy trial."  Nevertheless, the court granted the request, and the case was continued pending completion of the exam.  In October 2008, Russell was examined and deemed competent to stand trial.

---

[4] The trial court did not explain why Russell's trial did not commence then.  The prosecution later stated that Russell "chose not to go forward" because he "complained of [his] Public Defender."  Dan Boykin, Russell's court-appointed lawyer at trial, represented that "from the defense standpoint[,] neither the [public defender] nor Mr. Russell was prepared to go to trial at that time because he had not communicated with an attorney."  Boykin also asserted that the public defender had not notified Russell of the February 11 date.

[5] The record is unclear about why the court substituted Russell's counsel.  The court's order itself said it was in response to a motion filed by the public defender's office, which requested to withdraw due to a conflict between Russell and the office.  No such motion appears in the record before us.  Elsewhere, the prosecutor contended that Russell's change in counsel occurred because "Russell was complaining of his public defender and demanding new counsel."

Russell's trial commenced on January 27, 2009. Before the jury was brought into the courtroom, the trial court considered a motion from Boykin to set aside the court's previous denial of Russell's pro se speedy-trial claim. In this iteration, Boykin focused on Russell's Sixth Amendment right to a speedy trial rather than the state statutory guarantee. Russell testified that the 14-month delay that occurred while he was represented by public defenders prejudiced his defense. He stated that he "lost contact of" his purported alibi witness during the delay because he was imprisoned and received no assistance from his lawyers in locating "Ron Ron." The trial court denied the motion.

At trial, Russell testified on his own behalf, maintaining that "Ron Ron," who has never surfaced, picked him up from the Hawkins home before Porter was shot. Porter also testified at trial, as did Lawanda Hawkins, her sister Vicki, and three police officers. The jury found Russell guilty on both counts. Because he had four previous convictions,[6] he was sentenced as a habitual offender to two life sentences without the possibility of parole.

Following sentencing, Russell—still represented by Boykin—filed a direct appeal. *See Russell v. State*, 79 So. 3d 529 (Miss. Ct. App. 2011). Among other issues, Russell challenged the trial court's denial of his counsel's motion to set aside the denial of his pro se speedy trial motion. *See id.* at 534.

Evaluating that claim, the Mississippi Court of Appeals considered the speedy-trial factors articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). First, it found that the length of delay was "presumptively prejudicial." 79 So. 3d at 537. As to the reasons for the delay, the court concluded that the

---

[6] Russell had been convicted of aggravated assault, possession of cocaine, possession of marijuana, and possession of a firearm by a convicted felon.

first fourteen months weighed against the prosecution, while the next eleven months weighed against the defense, so this factor was "neutral." *Id.* at 538. The court recognized that Russell had repeatedly asserted his right but determined that his assertion of prejudice "lack[ed] support." *Id.* Weighing these factors, the court held that "[a]lthough the circuit judge did not fully articulate his calculations regarding defense delay in his findings, . . . the circuit court's findings [were] supported by substantial evidence in the record." *Id.* at 539. Therefore, the appellate court concluded that Russell's speedy-trial claim was "without merit," *id.*, and affirmed Russell's conviction, *id.* at 545.

Russell petitioned the Mississippi Supreme Court for a writ of certiorari. In his pro se petition, he again urged that his right to a speedy trial had been violated. The court denied his petition without comment. *See Russell v. State*, 80 So. 3d 111 (Miss. 2012).

Russell subsequently filed a pro se state petition for post-conviction relief. In it, he raised his constitutional speedy-trial claim again, and he also asserted a claim of ineffective assistance of counsel.[7] He alleged that his public defenders had failed to contact him for over a year. He also alleged that Boykin had provided ineffective assistance at trial and on appeal. The Mississippi Supreme Court denied his petition. The court rejected his speedy-trial claim on res judicata grounds. And it held that his claims of ineffective assistance of counsel "fail[ed] to meet both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984)."

---

[7] Russell also challenged the timing of the State's motion to amend his indictment to allege that he was a habitual offender and the constitutionality of his prior conviction for possession of a firearm by a felon. He did not raise these issues in his federal habeas petition.

No. 21-60344

Russell, still pro se, then filed the instant federal habeas application, reasserting both his speedy-trial and ineffective-assistance claims. The magistrate judge recommended dismissal. Russell objected to the magistrate judge's report and recommendation. The district court determined that "the issues [the application] presents are significant not just to Mr. Russell, but to the very functioning of a minimally-adequate criminal justice system." Therefore, the district court appointed counsel to represent Russell.[8]

Russell's counsel then filed an amended objection to the magistrate judge's report and recommendation, arguing that Russell faced "a breakdown in the public defender system." Relying on *Vermont v. Brillon*, 556 U.S. 81, 86 (2009), Russell now urged that this breakdown required the delay in his underlying trial proceedings to weigh against the State, such that Russell's right to a speedy trial was clearly violated. The amended objection devoted little more than a page to Russell's ineffective-assistance claim, asserting only that the magistrate judge was wrong that Russell had failed to prove prejudice under *Strickland*.

The district court granted Russell's application for habeas relief. *Russell v. Denmark*, 528 F. Supp. 3d 482, 509 (S.D. Miss. 2021). The court found that Russell had faced "a systemic 'breakdown in the public defender system'" in Hinds County. *Id.* at 499 (quoting *Brillon*, 566 U.S. at 94). This finding was in turn the primary basis for the court's determination that the *Barker* factors supported Russell's speedy-trial claim. *Id.* at 505–06. Specifically, the court reasoned that the delay due to the appointment of successive counsel leading up to trial was attributable to the "systemic breakdown" and should be charged against the State. *Id.* at 498–99. The

---

[8] The court appointed Alysson Mills, who has continued to represent Russell on appeal. Consistent with his previous history, Russell also filed pro se motions with the district court even after Mills was appointed to represent him.

court concluded that the delay frustrated Russell's ability to locate "Ron Ron" and that finding the alibi witness would have had a "high probability" of "alter[ing] the outcome of the trial on the aggravated assault charge." *Id.* at 502. It followed that the Mississippi Court of Appeals "was objectively unreasonable not to find that Russell was prejudiced" by the delay in his trial. *Id.* at 504. The district court limited its speedy-trial ruling to Russell's aggravated-assault conviction; because "Ron Ron's testimony likely 'could not have altered the outcome of the trial' on the felon in possession charge," the court concluded that Russell "did not suffer actual prejudice on that charge." *Id.* at 504 (citing *Cowart v. Hargett*, 16 F.3d 642, 648 (5th Cir. 1994)).

The district court also granted habeas relief on Russell's ineffective-assistance-of-counsel claim. *Id.* at 509. The court read Russell's habeas complaint as alleging a claim under *United States v. Cronic*, 466 U.S. 648 (1984), rather than *Strickland*. *Id.* at 508. Concluding that Russell faced a "complete denial of counsel" under *Cronic* while he was represented by the public defenders, the court held that "the Mississippi Supreme Court's application of *Strickland* to this case [was] an erroneous and unreasonable application of the clearly established Supreme Court law set forth in *Cronic*." *Id.* at 507. While the district court's speedy-trial relief was limited only to one of Russell's convictions, its holding on Russell's ineffective-assistance claim applied to both because "*Cronic*'s presumption of prejudice applies to both the aggravated assault and felon in possession charges." *Id.* at 509.

The State timely appealed to this court. The district court stayed its ruling pending appeal. *Id.*

## II.

In an appeal from a district court's grant of habeas relief, we review the court's findings of fact for clear error and its conclusions of law *de novo*. *Hughes v. Vannoy*, 7 F.4th 380, 386 (5th Cir. 2021).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, federal courts review state court habeas decisions deferentially. *Id.* AEDPA permits a federal court to grant habeas relief only where a state court "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). This standard is "difficult to meet," *Richter*, 562 U.S. at 102, because it requires that the state court's decision be "so lacking in justification" that the error is "beyond any possibility for fairminded disagreement," *id.* at 103.

Deference applies even when the state court decides an issue without fully explaining its reasoning. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003); *accord Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (per curiam) ("[D]eference due under section 2254(d)(1) is not diminished by the fact that the [state court] did not explain the reasons for its determination[.]"). This is "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision," "not the written opinion explaining that decision." *Schaetzle*, 343 F.3d at 443 (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)). Thus, in reviewing a state court opinion, this court focuses on "the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal*, 286 F.3d at 246.

No. 21-60344

## III.

First, we consider whether the district court erred in granting relief on Russell's speedy-trial claim. It did. Rather than deferentially considering whether the state court decision was "so lacking in justification" as to merit habeas relief, *Richter*, 562 U.S. at 103, the district court effectively reviewed the claim *de novo*, contravening AEDPA. Accordingly, we reverse and render judgment in favor of the State.

## A.

We begin with the well-established analytical framework. For a half century, courts have analyzed speedy-trial claims using the four *Barker* factors:

(1)  the length of delay,
(2)  the reason for the delay,
(3)  the defendant's assertion of his right to speedy trial, and
(4)  prejudice to the defendant.

407 U.S. at 529–34.

In reviewing a state court's application of the *Barker* factors to a particular case, the "always-substantial deference" we afford to state courts in federal habeas review "is at an apex." *Amos*, 646 F.3d at 205. After all, the *Barker* factors are "a broad, general standard whose application 'to a specific case can demand a substantial element of judgment.'" *Id.* (citation omitted). Therefore, in habeas review of a state prisoner's speedy-trial claim, federal courts must "give the widest of latitude to a state court's conduct of its speedy-trial analysis." *Id.*

In applying that latitude, AEDPA limits habeas review to whether a state court's adjudication "resulted in a *decision*" that warrants relief under AEDPA's standard. 28 U.S.C. § 2254(d) (emphasis added). A reviewing

10

No. 21-60344

federal court's disagreement with the state court's weighing of individual *Barker* factors is thus not itself grounds for reversal. *Goodrum v. Quarterman*, 547 F.3d 249, 265–66 (5th Cir. 2008). Rather, under AEDPA, we may disagree with "some of the state court's preliminary conclusions" but will nonetheless deny relief so long as the state court's ultimate decision—here, that the balance of the four *Barker* factors did not merit relief—is objectively reasonable and not contrary to law. *Id.*; *see also id.* at 255–56.

As for which state court decision is our focus, "[u]nder AEDPA, 'we review the last reasoned state court decision.'" *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014) (citation omitted). "Using the 'look through' doctrine, we 'ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision.'" *Id.* (citation omitted). In this case, that means we "look through" both the Mississippi Supreme Court's res judicata denial of Russell's speedy-trial habeas claim and its earlier, unexplained denial of certiorari in Russell's direct appeal to train our sights, as the parties do, on the speedy-trial decision by the Mississippi Court of Appeals during Russell's direct appeal.

## B.

To be sure, the Mississippi Court of Appeals did not explicitly engage in a balancing of the *Barker* factors in deciding Russell's direct appeal. *See Russell v. State*, 79 So. 3d at 538–39. But as mentioned, "AEDPA does not require state courts to explain their reasoning . . . before benefitting from deference." *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012) (citing *Richter*, 562 U.S. at 98). Yet the district court "appears to have treated [AEDPA's] unreasonableness question as a test of its confidence in the result it would reach under *de novo* review[.]" *Richter*, 562 U.S. at 102. In doing so, the district court's "analysis overlook[ed] arguments that would otherwise justify the state court's result," *id.*, and instead reweighed the *Barker* factors

11

afresh. This "lack of deference to the state court's determination" constituted "an improper intervention in state criminal processes," *id.* at 104, such that the district court erred in granting Russell's habeas application on the speedy-trial issue.

### 1.

While our focus is on "the result of the state court's balancing of the *Barker* factors[,] . . . we will conduct a limited review of the [Mississippi Court of Appeals]'s analysis of each *Barker* factor" as a way of "facilitat[ing] our evaluation of . . . the state court's decision." *Goodrum*, 547 F.3d at 257. The parties generally agree about *Barker* factors one and three, so we need not tarry on them. For factor one—the length of delay—the Mississippi Court of Appeals properly found that the 25-month delay in Russell's case weighed against the State, though not heavily. *Russell v. State*, 79 So. 3d at 537; *see Goodrum*, 547 F.3d at 257 (viewing a delay of one year or more as presumptively prejudicial); *cf. Amos*, 646 F.3d at 206–07 (requiring that the delay extend beyond two-and-a-half years to weigh heavily against the State). While the district court quibbled with aspects of the state court's analysis on this issue, *Russell*, 528 F. Supp. 3d at 496, it did not disagree with the upshot, i.e., that the length of delay weighed against the State, *id.* at 496–97. Because "a federal habeas court is authorized . . . to review only a state court's 'decision,'" *Schaetzle*, 343 F.3d at 443, we need not dwell further on this factor.

Similarly, on factor three—the defendant's assertion of the right—the parties correctly agree that Russell's "assertion of his speedy trial right receives strong evidentiary weight[.]" *Amos*, 646 F.3d at 207. The district court faulted the state court for failing to make an "express finding regarding this factor" and noted that our court has held under similar circumstances that the state court's failure to assign a strong weight in defendant's favor is

No. 21-60344

"contrary to clearly-established law." *Russell*, 528 F. Supp. 3d at 500 (quoting *Goodrum*, 547 F.3d at 249). True enough, but again, "our disagreement with some of the state court's preliminary conclusions," or, really, the lack of an express finding here, "does not provide grounds for reversal so long as we find *the ultimate decision* to be objectively reasonable" and not contrary to law. *Goodrum*, 547 F.3d at 265–66 (emphasis added); *see also id.* at 255–56. Assuming *arguendo* that the Mississippi Court of Appeals erred by failing explicitly to weight this factor strongly in Russell's favor, that error does not in itself fatally undermine the ultimate decision by the state court.

**2.**

The parties, like the state and district courts, sharply diverge on the second *Barker* factor, the reason for the delay. *See Barker*, 407 U.S. at 531. Courts look to the delay's causes to determine which party bears fault for the delay, and how heavily:

> At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state.[9] At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these two extremes fall unexplained or negligent delays, which weigh against the state, but not heavily.

*Goodrum*, 547 F.3d at 258 (internal quotations and citations omitted).

---

9 Russell's pro se federal habeas petition could be read to allege such a deliberate delay. The magistrate judge read his petition this way. She wrote, "Petitioner alleges that the state court wrongly attributed his change of counsel and mental evaluation to the defense when they were, in fact, attempts by the State, in conspiracy with his court appointed attorneys and the trial judge, to cover up his public defender's failures and obtain an impermissible and unfair advantage against the defense." Assuming *arguendo* that was Russell's contention, the record provides no support for it.

13

The state court "weigh[ed] this factor as neutral." *Russell v. State*, 79 So. 3d at 538. The court found that delay early in the case, while Russell was represented by public defenders, weighed against the State. *Id.* at 537. But later delays due to "withdrawal of the defendant's attorney" and the mental evaluation Russell's counsel requested weighed in the State's favor. *Id.* at 537–38.

The district court agreed that the early delay weighed against the State. But it criticized the state court's findings regarding later delays. *Russell*, 528 F. Supp. 3d at 498–99.

We first consider the delay caused by defense counsel's request for a mental evaluation. The district court correctly noted that "the nearly seven-month delay caused by Russell's mental evaluation" would "ordinarily not [be] assessed against the state." *Id.* at 499. Nevertheless, the district court raised a concern: "[W]e have no record of why a mental examination was requested—or why one was granted." *Id.* The court answered that concern with a hypothesis, that the evaluation may have been "the easiest way to get Russell's case off the docket, or perhaps to keep him incarcerated for months more on end without the speedy trial clock running." *Id.* After conjecturing about "why the record is silent on such an important issue," the district court "set[] aside how the mental evaluation delay is construed." *Id.* Yet the district court's hypothesizing crystallizes the court's overarching error in this case: Rather than affording AEDPA deference to the state court, the district court substituted its own speculation about *Russell's* request for a mental evaluation to question the state court's weighing of this factor.

To reiterate, AEDPA demands that reviewing federal courts "determine what arguments or theories supported or . . . could have supported, the state court's decision," and then "ask whether it is possible fairminded jurists could" find those arguments reasonable and consistent

with Supreme Court precedent. *Richter*, 562 U.S. at 102. If so, end of analysis; the state court's determination should be upheld. By contrast, the district court here theorized points that could undermine the state court's decision and then contemplated whether "a neutral observer [w]ould be concerned[.]" 528 F. Supp. 3d at 499. This approach conflates "deference" with "*de novo*," turning AEDPA's framework on its head along the way.

Besides, the court's hypothesis does not hold water when tested against the record. The district court's theory about why the state trial court ordered a mental evaluation minimizes the fact that Russell's appointed counsel, Boykin, requested the evaluation—and later conceded that the delay "during the period of time that we were awaiting the evaluation . . . is not attributable to the State." It strains credulity to imagine that Russell's counsel requested the evaluation to help the state court cover its speedy-trial errors, especially given Boykin's zealous advocacy on Russell's behalf on the speedy-trial issue. Regardless, a delay caused by defense counsel is usually charged against the defendant, *Brillon*, 556 U.S. at 91, just as the Mississippi Court of Appeals concluded.

And the record provides ample justification for the evaluation. The state trial transcript describes a letter Russell wrote to Porter, the shooting victim, that included "some very strange things about hearing voices and from the Air Force and whatever." The trial judge explicitly stated that this letter was "part of the reason for which [Russell] was sent for a mental examination." Viewed through AEDPA's deferential lens, the state court's determination that the delay for Russell's mental evaluation weighed against him was not unreasonable or contrary to law.

As for the delay due to Russell's change in counsel, the district court found the state court's assessment, charging the delay to Russell, to be "contrary to . . . Supreme Court precedent." 528 F. Supp. 3d at 498. The

district court again misapplied the AEDPA standard of review. *See* 28 U.S.C § 2254(d)(1) (requiring that a state court decision be "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States").

"A state-court decision is 'contrary to' clearly established federal law only if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if' it resolves 'a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (alterations in original). To prevail, a defendant must point to "Supreme Court precedent that is 'opposite to' or 'materially indistinguishable' from this case." *Id.* at 155–56 (quoting *Williams*, 529 U.S. at 413). This is such a high bar that "in most AEDPA cases, the 'contrary to' prong does not apply." *Id.* at 156.

The district court's conclusion that the state court's charging this delay to Russell contravened Supreme Court precedent primarily rested on one line in *Brillon*: "Delay resulting from a systemic breakdown in the public defender system could be charged to the State." 556 U.S. at 94 (citation and quotation marks omitted), *quoted in Russell*, 528 F. Supp. 3d at 497. As a threshold matter, we are not convinced that this one line clearly establishes a "systemic breakdown" rule as expounded by the district court. Regardless, the district court otherwise failed to explain how *Brillon* is "'opposite to' or 'materially indistinguishable' from this case." *Langley*, 926 F.3d at 155 (quoting *Williams*, 529 U.S. at 413).[10] If anything, to the extent this case is

---

[10] In fact, to justify relief for Russell, the district court actually *distinguished* Russell's case from Brillon's (where relief was denied). *Russell*, 528 F. Supp. 3d at 498 (describing how Russell is "[u]nlike Brillon"). Thus, the district court itself seemed to reject the conclusion that this case is materially indistinguishable from *Brillon*.

"indistinguishable" from *Brillon*, it actually cuts *against* Russell:  As his counsel conceded during oral argument, there is no "evidence in this record of a broad systemic breakdown."   *Cf. Brillon*, 556 U.S. at 94 ("[T]he Vermont Supreme Court made no determination, and nothing in the record suggests, that institutional problems caused any part of the delay in Brillon's case.") (citations and quotations omitted).  Russell's case alone cannot suffice to prove a *systemic* breakdown of the Hinds County public defender system.  And without such evidence, we cannot conclude that the state court's decision was contrary to *Brillon*'s observation that a "systemic breakdown" could weigh against a state.

The district court secondarily reasoned that "[t]o the extent that the egregious lack of counsel was due to negligence," the state court decision was also contrary to *Barker* because responsibility for negligence in providing counsel "must rest with the government rather than the defendant."  528 F. Supp. 3d at 498 (quoting *Barker*, 407 U.S. at 531).  But the court did not explain how the state court's ruling was legally "opposite to" or factually "materially indistinguishable" from *Barker*.  *See Langley*, 926 F.3d at 156.  "So here, as in most AEDPA cases, the 'contrary to' prong does not apply," *id.*, and the district court erred in concluding otherwise.

We recognize that the record is susceptible to different conclusions about *why* Russell received new counsel.  *See supra* note 5.  But under AEDPA, in the face of such ambiguity, we look to what arguments could *support* the state court's determination that this factor weighed against Russell.  *See Richter*, 562 U.S. at 102.  Had the district court done likewise, it would have readily found such support.  On its face, the state trial court's order relieved Russell's public defenders after the defense so requested "on the grounds that a conflict of interest exist[ed] in this case between the Defendant and the office of the Hinds County Public Defender[.]"  Elsewhere in the record, prosecutors asserted that Russell himself

"demand[ed] new counsel" in his numerous pro se motions "complaining of his public defender[.]"  Whether counsel was substituted in response to the public defenders' motion or Russell's demands, or both, the resulting delay would properly weigh against Russell.  *See Brillon*, 556 U.S. at 90–91 (citations, quotations, and brackets omitted) ("Because the attorney is the [defendant's] agent . . . , delay caused by the defendant's counsel is also charged against the defendant . . . whether counsel is privately retained or publicly assigned[.]").  We thus cannot conclude that the Mississippi Court of Appeals acted unreasonably or contrary to law in doing so.

**3.**

The parties also vigorously contest the fourth *Barker* factor, prejudice.  The state court found no prejudice because Russell's mere assertions of mental anxiety and a lost alibi witness ("Ron Ron"), without further evidence, were insufficient.  *Russell v. State*, 79 So. 3d at 538.  The district court determined that Russell's assertions were sufficient to show prejudice as to his aggravated-assault charge, though not as to his felon-in-possession charge.  *Russell v. Denmark*, 528 F. Supp. 3d at 504.  We consider the competing conclusions and again conclude that the district court erred in failing to afford proper deference to the state court's decision.

First, Russell's anxiety.  The state court rejected Russell's alleged mental anxiety as insufficient to show prejudice under Mississippi law.  79 So. 3d at 538 (citing *Jenkins v. State*, 947 So. 2d 270, 277 (Miss. 2006)).  The district court held that conclusion to be "flatly contrary to federal law."  528 F. Supp. 3d at 503 (citing *Goodrum*, 547 F.3d at 262–63).  We disagree.

*Barker* recognized "anxiety and concern of the accused as a type of cognizable harm that may result from a delayed trial[.]"  *Goodrum*, 547 F.3d at 263.  But a defendant must present more than "a minimal showing" of general anxiety to sustain a speedy-trial claim.  *Id.*; *see also United States v.*

*Frye*, 489 F.3d 201, 213 (5th Cir. 2007) ("[B]ecause Frye offered no evidence beyond his own testimony that he suffered anxiety, Frye's anxiety does not justify finding a speedy trial violation."). Here, Russell offered nothing more than "generalized expressions of anxiety." *Goodrum*, 547 F.3d at 263. Moreover, the fact that Russell faced not one, but two, life sentences was in itself likely to cause anxiety, making it "unlikely" that trial delay was the true cause of any mental anxiety. *See id.*

Eliding these points, the district court concluded that the state court's analysis of Russell's alleged anxiety "disregard[ed] . . . evidence" of "oppressive pretrial incarceration and anxiety" in a way that was "contrary to longstanding federal law." 528 F. Supp. 3d at 504. Rather than citing any Supreme Court case contrary to the state court's decision though, the court cited two of its own opinions and a newspaper article to tie Russell's alleged anxiety to his prolonged detention at "a troubled jail." *Id.* at 503 (quoting *Patterson v. Hinds Cnty., Miss.*, No. 3:13-CV-432-CWR-FKB, 2016 WL 7177762, at *9 (S.D. Miss. June 10, 2016)); *see also id.* at n.24. In fact, our own search reveals no Supreme Court yardstick, based on "materially indistinguishable facts," by which to conclude that the state court "arrive[d] at a conclusion opposite to that reached by" the Court. *Langley*, 926 F.3d at 155–56 (emphasizing that "the 'contrary to' prong" of AEDPA is a demanding standard that in most cases "does not apply"). And to the extent that the district court's disagreement with the state court's view of the evidence drove its conclusion, AEDPA deference requires more than a resifting of the evidence: The state court's decision must have been "based on an *unreasonable determination* of the facts in light of *the evidence presented* in the State court proceeding." 28 U.S.C. § 2254(d)(2) (emphasis added); *cf. Russell*, 528 F. Supp. 3d at 503 n.24 (discussing evidence that was never presented to the state court). Given the record before it, the state court's rejection of Russell's assertion that his anxiety showed prejudice was neither

an unreasonable view of the evidence—or lack thereof—nor contrary to federal law.

Next, "Ron Ron." The state court rejected Russell's alleged lost alibi witness as a basis for prejudice because it "lack[ed] support" in the record. 79 So. 3d at 538. The court found Russell's account of an alibi witness to be vague and unspecific, as Russell did not even know his last name. *Id.* The district court disagreed, pointing to "the record evidence" of Russell's relationship with "Ron Ron" to conclude that the state court was "objectively unreasonable" for finding otherwise. 528 F. Supp. 3d at 501, 504. But the only evidence of the witness's existence came from Russell's own testimony, and Russell gave varying explanations over time for how he lost track of "Ron Ron." We have rejected similar prejudice claims relying only on vague, unspecific alibis. *See Cowart v. Hargett*, 16 F.3d 642, 648 (5th Cir. 1994) (viewing Cowart's alleged exculpatory witness "known only as 'Peanuts'" "with disfavor" because "the allegation [was] not supported by the production of the witness who allegedly would have altered the outcome of the trial"). Thus, reasonable jurists could reject Russell's unsupported, vague, and changing story about "Ron Ron," as the state court did here.

But even if Russell's allegations about "Ron Ron" were sufficiently concrete and substantiated, it was also reasonable for the state court to conclude that the witness's purported testimony would not have changed the outcome at trial. Despite the district court's assertion otherwise, 528 F. Supp. 3d at 502, Russell testified extensively during his trial about "Ron Ron." So the jury had an opportunity to consider Russell's alibi—and rejected it. Apparently, the jury found more persuasive the testimony of multiple witnesses who observed Russell immediately before Porter was shot. Assuming "Ron Ron" could have been located and might have testified, reasonable jurists could conclude that his testimony would not have changed

the jury's verdict, but only "transformed [Russell's] alibi from an incredibly tall tale to just a tall one." *Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993).

Accordingly, the district court erred in holding that the state court was "objectively unreasonable not to find that Russell was prejudiced" in preparing his alibi defense. 528 F. Supp. 3d at 504.[11] And the district court offered no clearly established law that the state court applied unreasonably. *Cf. Richter*, 562 U.S. at 101 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)) ("[I]t is not an unreasonable application of clearly established Federal law to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."). Instead, the district court substituted its own view of the evidence and concluded, contra the state court, that "Ron Ron's" testimony would have made a difference. 528 F. Supp. 3d at 502–03. Such is the stuff of *de novo* review, not of a deferential inquiry under AEDPA.

## IV.

### A.

Claims of ineffective assistance of counsel are ordinarily evaluated under *Strickland v. Washington*'s two-part test, which requires (1) that "counsel's performance was deficient" and (2) that "the deficient performance prejudiced the defense." 466 U.S. at 687; *see also Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997) ("The vast majority of [such] claims can be analyzed satisfactorily under the . . . test of *Strickland*."). However, on the same day it decided *Strickland*, the Supreme Court created

---

[11] It is unclear whether the district court meant that the state court's decision "involved an unreasonable application of" law, *see* 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts," *see id.* § 2254(d)(2). Whichever, the district court was in error.

a "a very limited exception to the application of *Strickland*'s two-part test" in *United States v. Cronic*, 466 U.S. 648 (1984). *Thomas v. Davis*, 968 F.3d 352, 355 (5th Cir. 2020) (quoting *Haynes v. Cain*, 298 F.3d 375, 380 (5th Cir. 2002)). *Cronic* applies when "the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *United States v. Griffin*, 324 F.3d 330, 364 (5th Cir. 2003) (citing *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000)); *see Bell v. Cone*, 535 U.S. 685, 695 (2002) (The "most obvious" time *Cronic* applies is when a criminal defendant suffers "the complete denial of counsel."). To sustain a *Cronic* claim, such denial of counsel must occur "at a critical stage" of a defendant's proceedings. 466 U.S. at 659; *see also Cone*, 535 U.S. at 695–96.

"[V]ery different results flow" from whether a defendant raises a *Strickland* or *Cronic* claim. *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (quoting *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990)). A *Strickland* claim requires that the defendant prove prejudice, *see* 466 U.S. at 687, but under *Cronic*, prejudice is presumed, *see* 466 U.S. at 659. And while setting aside a conviction under *Strickland* "is made on a case by case basis," a successful *Cronic* claim "*requires* that [the] conviction be overturned[.]" *Black*, 902 F.3d at 547 (internal quotations omitted) (emphasis added).

The parties dispute whether Russell pled his ineffective-assistance claim in the state courts under *Strickland* or *Cronic*. The reviewing courts disagreed as well—the Mississippi Supreme Court addressed his claim under *Strickland*, but the district court discerned a *Cronic* claim, 528 F. Supp. 3d at 506–08. What Russell pled matters because AEDPA requires exhaustion, *see* 28 U.S.C. § 2254(b)(1)(A), meaning "that a state prisoner who does not fairly present a claim to a state habeas court—specifying both the legal and factual basis for the claim—may not raise that claim in a subsequent federal proceeding," *Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021) (en banc)

(plurality). "Whether a federal habeas petitioner has exhausted state remedies is a question of law reviewed *de novo*." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (citations omitted).

Put simply: The law "require[s] a state prisoner to present the state courts with the *same claim* he urges upon the federal courts." *Lucio*, 987 F.3d at 464 (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). In assessing whether a claim has been exhausted, we look to its substance. *Black*, 902 F.3d at 546 ("[T]he substance of the relief sought by a pro se pleading controls[.]") (alteration omitted). *Strickland* and *Cronic* claims are distinct for exhaustion purposes. *Id.* (quoting *Cone*, 535 U.S. at 697) ("[T]he distinction between 'the rule of *Strickland* and that of *Cronic* . . . is not of degree but of kind.'"). We thus look to Russell's state habeas petition to ascertain whether he "assert[ed] that he received incompetent counsel," a *Strickland* claim, "or none at all," a *Cronic* claim. *Id.* at 546–47 (quoting *Childress*, 103 F.3d at 1230). And if Russell did not assert a *Cronic* claim in state court, the district court was not at liberty to grant habeas relief based on *Cronic*. *See Nickleson v. Stephens*, 803 F.3d 748, 752 (5th Cir. 2015) ("[N]o habeas application may be granted unless the applicant has exhausted available remedies in state court.").

## B.

Russell's state post-conviction petition is not completely clear; it mentions neither *Strickland* nor *Cronic*. To be sure, Russell's chief complaint—that he was "held in custody . . . without being contacted by an attorney until approximately (14) months after his arrest,"—could be read as alleging poor lawyer-client communication (under *Strickland*) or a complete denial of counsel (under *Cronic*). But Russell's petition twice labeled his counsel's performance "deficient." Indeed, his petition challenged not only his public defenders' performance, *but also Boykin's*. And he specifically and

repeatedly alleged prejudice from the deficient performance. Even with the liberal construction afforded pro se filings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), we read Russell's state petition as alleging a *Strickland* claim, as the Mississippi Supreme Court did.

And Russell exhausted this *Strickland* claim because he alleged the same claim in federal court. His pro se federal habeas application again complained of "prejudice" due to the public defenders' "deficient" performance. Further, his amended objections to the magistrate judge's report and recommendation, filed by counsel appointed by the district court, did not dispute the magistrate judge's interpretation of his claim as arising under *Strickland*. Instead, counsel objected only that the magistrate judge "incorrectly determined that Russell's [public defenders'] deficient performance did not prejudice" him.

The district court's divining a *Cronic* claim—when not even counsel the district court appointed for Russell did—is thus problematic, for several reasons. Foremost, the district court erred by granting relief for a *Cronic* claim not raised in state court. *See* 28 U.S.C. § 2254(b)(1)(A). Doing so contravened AEDPA's exhaustion requirement and the underlying "policy of federal-state comity," that state courts must have "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Anderson*, 338 F.3d at 386 (quoting *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001)). Moreover, assuming the district court was correct in treating the claim as arising under *Cronic*, the court's analysis strayed from the exacting limitations our precedent requires, erroneously concluding that Russell's claim merited relief. Finally, by solely reviewing Russell's claim under *Cronic*, the district court neglected to analyze Russell's claim under the right framework—*Strickland*'s. Had it done so, *Strickland*'s standard would have yielded a ready conclusion that the Mississippi Supreme Court was within its AEDPA bounds to deny relief. We address each of these points in turn.

## C.

To the extent that Russell's state habeas claim arose under *Strickland*, he failed to exhaust a denial-of-counsel claim, and the district court could not grant relief under *Cronic*. *See, e.g.*, *Lucio*, 987 F.3d at 464; *Nickleson*, 803 F.3d at 752. That should have ended the court's *Cronic* analysis, full stop.

But even ignoring the hallmarks of a classic *Strickland* claim contained in Russell's state and federal petitions and the explicit reliance on *Strickland* in his amended objections to the magistrate's report, his ineffective-assistance claim fails under *Cronic*'s rubric. Preliminarily, because nothing in the record indicates that the state court evaluated Russell's claim as a *Cronic* claim,[12] AEDPA's usual deferential standard of review would not apply; a reviewing federal court instead would "review such claims *de novo*[.]" *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009) (italics added) ("[T]he AEDPA-mandated deference to state-court decisions does not apply if the petitioner properly exhausted his claim by raising it in the state court, but the state court did not adjudicate that particular claim on the merits."). Regardless of the standard of review,[13] though, Russell's claim fails.

To analyze a claim under *Cronic*, this court, like the district court, must determine whether a petitioner was effectively denied counsel, and if

---

[12] Nothing suggests that the state court rejected a *Cronic* claim here "without expressly addressing that claim," so we do not "presume that the [*Cronic*] claim was adjudicated on the merits" by the state court for purposes of whether AEDPA deference applies. *Thomas*, 968 F.3d at 292 (5th Cir. 2020) (citation omitted); *see also Richter*, 562 U.S. at 99.

[13] The district court did not discuss this issue. Nor did the parties brief whether AEDPA or *de novo* review applies to Russell's claim, if viewed as one arising under *Cronic*. Even so, "[a] party cannot waive, concede, or abandon the applicable standard of review." *United States v. Vasquez*, 899 F.3d 363, 380 (5th Cir. 2018) (quoting *United States v. Escobar*, 866 F.3d 333, 339 (5th Cir. 2017) (per curiam)).

so, whether that denial occurred at a critical stage of the proceedings. *Cronic*, 466 U.S. at 659; *see also Griffin*, 324 F.3d at 364; *United States v. Pleitez*, 876 F.3d 150, 157–58 (5th Cir. 2017). We cannot say that Russell was "effect[ively] denied any meaningful assistance at all." *Griffin*, 324 F.3d at 364 (quoting *Gochicoa*, 238 F.3d at 284). The public defenders who initially represented him made appearances at his preliminary hearing and arraignment; filed discovery motions on his behalf; and engaged in apparent plea bargaining. To be sure, these efforts appear perfunctory. And nothing in the record shows that Russell's public defenders discharged their "duty to make reasonable investigations" in preparation for trial based on "information supplied by the defendant." *Strickland*, 466 U.S. at 691. But counsel's actions, even if inadequate or ineffectual, do not amount to the complete denial of counsel we have found to violate *Cronic*. *Cf. Burdine v. Johnson*, 262 F.3d 336, 338 (5th Cir. 2001) (en banc) (finding denial of counsel where lawyer slept through a significant portion of trial).[14]

Even assuming Russell was effectively denied counsel during the time the public defenders were counsel of record, that denial must have occurred during a "critical stage" of his proceedings. The district court broadly concluded that "the period between the appointment of counsel and the start of trial is indeed a 'critical stage' for Sixth Amendment purposes." 528 F. Supp. 3d at 506. Too broadly. Neither the Supreme Court nor this court has

---

[14] In holding otherwise, the district court relied on a trio of Fifth Circuit cases to conclude that the public defenders "should have been preparing for Russell's trial and securing the [alibi] witness." *Russell*, 528 F. Supp. 3d at 508 (citing *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994), *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985), and *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981)). But those cases did not involve *Cronic* claims. *Bryant* and *Nealy* are explicitly *Strickland* cases. *Washington* is pre-*Strickland* and *Cronic* but contains no discussion of a *Cronic*-like denial of counsel. So while these three cases may establish that the public defenders' representation of Russell was deficient, they do not establish that it was effectively nonexistent.

ever held that the *entire* pretrial period is a critical stage. *Cf. Estelle v. Smith*, 451 U.S. 454 (1981) (psychiatric interview was a critical stage); *United States v. Wade*, 388 U.S. 218 (1967) (post-indictment line-up was a critical stage); *White v. Maryland*, 373 U.S. 59 (1963) (per curiam) (preliminary hearing was a critical stage); *Douglas v. California*, 372 U.S. 353 (1963) (direct appeal was a critical stage); *Pleitez*, 876 F.3d at 158 (sentencing was a critical stage); *Burdine*, 262 F.3d at 338 ("guilt-innocence phase" of trial was a critical stage). And we decline to do so here.

As these cases show, the Court has considered specific events as "critical stages"—a more granular approach than the blanket designation confected by the district court here. We must do likewise. Logically, if the district court's conclusion is correct that the entire pretrial period constitutes a "critical stage" in the *Cronic* analysis, then the more specific pretrial milestones identified in *Estelle* (psychiatric interview), *Wade* (post-indictment line-up), and *White* (preliminary hearing) would have been subsumed in an overarching "pretrial" stage. That they were not shows the overreach of the district court's holding. Further, we only find a critical stage where a denial of counsel was "of such significance that it ma[de] the adversary process itself unreliable." *Burdine*, 262 F.3d at 346 (quoting *United States v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000)). The district court sidestepped this rigorous analysis in stretching the "critical stage" to cover the whole pretrial period.

"The federal courts of appeal, including this one, have repeatedly emphasized that constructive denial of counsel as described in *Cronic* affords only a narrow exception to the requirement that prejudice be proved." *Childress*, 103 F.3d at 1228–29; *see also Haynes*, 298 F.3d at 380 ("*Cronic* created a very limited exception to the application of *Strickland*'s two-part test[.]"). *Cronic* requires an effective denial of counsel, not mere ineffective counsel. And it requires that the denial occurred during a specific, critical

stage of the proceedings. Even if we assume he alleged a *Cronic* claim, Russell has failed to show either predicate.

## D.

Finally, treating Russell's claim as arising under *Strickland*, as the district court should have, it quickly collapses. *Strickland*'s two-prong test requires both deficient performance and resulting prejudice to the defendant. *Strickland*, 466 U.S. at 687. Failure to prove either defeats the claim. *Id.* And in evaluating *Strickland* claims first decided in state habeas proceedings, AEDPA deference is heightened. "AEDPA review is 'doubly deferential' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam) (internal citations omitted). "[D]oubly deferential" means that we "afford 'both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

The Mississippi Supreme Court summarily rejected Russell's claim because it "fail[ed] to meet both prongs of *Strickland*." The court did not explain or otherwise specify whether Russell's claim failed on prong one or prong two (or both). But even when a state court fails to "reveal[] which of the elements in a multipart claim it found insufficient," the defendant's "burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. Russell has not carried this burden.

Even if we assume deficient performance by the public defenders who initially represented Russell (i.e., that *Strickland*'s first prong is met), Russell fails to demonstrate prejudice as a result of counsel's lapses. To do so, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694. Here, Russell makes the same prejudice argument as for his speedy-trial claim: that, without the deficient assistance of counsel, his alibi witness "Ron Ron" would have testified favorably at trial. But this argument fails for the same reasons it does as to Russell's speedy-trial claim. *See supra* III.B.3.

Failure to prove either prong of *Strickland* is fatal to a defendant's claim. *Strickland*, 466 U.S. at 687. Russell thus cannot show that "there was no reasonable basis" for the Mississippi Supreme Court's denial of relief. *Richter*, 562 U.S. at 98. Giving the state court "the benefit of the doubt," *Woods*, 578 U.S. at 117, Russell's ineffective-assistance claim lacks merit.

## V.

"When Congress supplies a constitutionally valid rule of decision, federal courts *must* follow it." *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022) (emphasis added). "In AEDPA, Congress announced such a rule." *Id.* Congress "designed [AEDPA] to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 562 U.S. at 103. AEDPA's deference to state court decisions means *deference*, not *de novo*. Federal habeas review is "not a substitute for ordinary error correction through appeal." *Id.* at 102–03. "[I]f AEDPA makes winning habeas relief more difficult, it is because Congress adopted the law to do just that." *Davenport*, 142 S. Ct. at 1526.

The Mississippi courts' decisions in this case "required more deference than [they] received." *Richter*, 562 U.S. at 113. Therefore, we REVERSE the judgment of the district court and RENDER judgment in favor of the State on Russell's petition for federal habeas relief.

REVERSED and RENDERED.