

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00105-CR

_____

JEREMY MCDILL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Titus County, Texas
Trial Court No. CR19288

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Pursuant to a plea agreement, Jeremy Shad McDill pled guilty to possession of methamphetamine in an amount of less than one gram, a state jail felony,[1] and, in 2016, he was placed on deferred adjudication community supervision for three years. In 2018, the State moved to adjudicate McDill's community supervision, alleging five violations of its terms and conditions. McDill was arrested on the State's adjudication motion, posted bond, but never appeared for his scheduled court dates. Overall, McDill was arrested six times from the filing of the motion to adjudicate until the hearing on that motion. Six years after the State filed its adjudication motion, but two days before the adjudication hearing, McDill filed a motion to dismiss for violation of his right to a speedy trial. McDill pled true to the allegations in the State's motion to adjudicate. After an evidentiary hearing, the trial court denied the motion to dismiss, adjudicated McDill guilty, and sentenced McDill to two years in a state jail facility.

On appeal, McDill argues that the trial court erred when it denied his motion to dismiss for violation of his right to a speedy trial because six years had elapsed from the time the State filed its motion to adjudicate guilt until the hearing on that motion. Because we find that the trial court properly overruled McDill's motion to dismiss for violation of his right to a speedy trial, we affirm its judgment.

I. **Background**

McDill pled guilty to possession of a controlled substance in penalty group 1 in an amount less than one gram (methamphetamine), a state jail felony, and was placed on deferred

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a)–(b) (Supp.).

adjudication community supervision for three years. The terms and conditions of the deferred adjudication community supervision required McDill to report to community supervision "as directed" by his community supervision officer.

On May 17, 2018, the State filed a motion to adjudicate. The State alleged that McDill violated the terms and conditions of his community supervision by (1) acknowledging use and possession of methamphetamine and marihuana, (2) failing to report for the "months of June and December, 2017; February, March, April, and May 2018," (3) failing to pay court-ordered fees, (4) failing to successfully complete DOE Safety Education classes, and (5) failing to serve a three-day confinement sanction for a positive drug test. When McDill was arrested five days later, on the adjudication warrant, he was served with the State's motion to adjudicate. However, the record establishes that McDill failed to appear for the trial court's first and second scheduled hearings on the State's adjudication motion.[2]

The trial court sent a notice to McDill requiring his appearance at the third scheduled adjudication hearing on May 22, 2024. Two days before the scheduled hearing, McDill filed a motion to dismiss for violation of his right to a speedy trial. At the hearing, McDill pled true to the allegations in the adjudication motion. The State did not present any witnesses, and McDill was the only witness that testified on his behalf. After the hearing, which included the issue of punishment, the trial court found all the allegations true in the motion to adjudicate, adjudicated

---

[2]The trial court sent notices to McDill requiring his appearance at the February 12, 2019, hearing on the State's motion to adjudicate his guilt. McDill failed to appear at that hearing and for a second hearing set by the trial court on January 27, 2021.

McDill guilty for the underlying felony, denied his motion to dismiss, and revoked his community supervision. The trial court sentenced McDill to two years in a state jail facility.

## II. Standard of Review & Relevant Law

"The right to a speedy trial guaranteed by the Constitutions of the United States and Texas is applicable to probation revocation proceedings." *Carney v. State*, 573 S.W.2d 24, 26 (Tex. Crim. App. 1978). "In Texas, the inquiry as to whether the accused's right to a speedy trial has been violated is the same under both the United States and the Texas constitutions." *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.); *see* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10. "The right attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the four *Barker v. Wingo*[3] factors." *Id.* (quoting *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). These factors include the (a) "length of the delay," (b) "reason for the delay," (c) "assertion of the right," and (d) "prejudice to the accused." *Id.*; *see Barker*, 407 U.S. at 530. No one factor is determinative, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Cantu*, 253 S.W.3d at 281. Although "the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280 (footnote omitted) (citation omitted). "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.*

---

[3]*See Barker v. Wingo*, 407 U.S. 514 (1972).

(quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81. "In conducting the balancing test, no single factor is determinative, and the conduct of both the prosecutor and the defendant are to be weighed." *Blaylock v. State*, 259 S.W.3d 202, 208 (Tex. App.—Texarkana 2008, pet. ref'd).

"In reviewing the trial court's ruling on [an accused's] federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Cantu*, 253 S.W.3d at 282 (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). Review of the *Barker* factors involves both legal and factual determinations, but "[t]he balancing test as a whole . . . is a purely legal question." *Id.* (alteration in original) (quoting *Zamorano*, 84 S.W.3d at 648 n.19). Almost total deference is given "to historical findings of fact of the trial court that the record supports," and we "draw reasonable inferences from those facts necessary to support the trial court's findings." *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014). "In our deliberation, we do not consider evidence and arguments that were not before the trial court at the time of its ruling." *State v. Ritter*, 531 S.W.3d 366, 371 (Tex. App.—Texarkana 2017, no pet.).

## III. The State Did Not Violate McDill's Right to a Speedy Trial

In his sole point of error, McDill argues that the trial court erred when it denied his motion to dismiss for violation of his right to a speedy trial because six years elapsed from the time the State filed its motion to adjudicate until the adjudication hearing occurred.

## A. Length of the Delay

"The length of delay is a double inquiry:  A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).  In an adjudication context, the start date used to measure the length of delay is the filing of a motion to adjudicate.  *See Martinez v. State*, 531 S.W.2d 343, 345 (Tex. Crim. App. 1976) (revocation).  The end date used to measure the length of delay is the date the adjudication hearing occurred or the "demand for a speedy trial." *Balderas v. State*, 517 S.W.3d 756, 771 (Tex. Crim. App. 2016); *see Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

"The *Barker* [inquiry] is triggered by a delay that is unreasonable enough to be [considered] 'presumptively prejudicial.'" *Cantu*, 253 S.W.3d at 281 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).  "In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" *Balderas*, 517 S.W.3d at 768 (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)).  Because the delay in this case was six years, it meets the minimum requirement to trigger a *Barker* analysis.

After the *Barker* analysis is triggered, we must then analyze the second part of the inquiry—"to what extent it stretches beyond this triggering length." *Hopper*, 520 S.W.3d at 924.

The complexity of the case is a consideration to determine the weight given to this factor. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. The State moved for the trial court to adjudicate McDill's guilt for possession of less than one gram of methamphetamine. The main allegations in the motion to adjudicate involved failures to report. Accordingly, nothing suggested that McDill's case was complex.

Combined with the lack of complexity, the six-year delay stretches "far beyond the minimum needed to trigger the [*Barker*] enquiry." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *see Wisser v. State*, 350 S.W.3d 161, 165 (Tex. App.—San Antonio 2011, no pet.) ("four years is an unusually lengthy delay in a probation revocation case"). We find this factor weighs heavily in favor of finding a violation of McDill's speedy-trial right.

### B.      Reason for the Delay

The second factor requires the State to show whether the delay was justifiable. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *Doggett v. United States*, 505 U.S. 647, 651 (1992) ("whether the government or the criminal defendant is more to blame for that delay"). While the "burden of excusing the delay rests with *the State*," *Phillips v. State*, 650 S.W.2d 396, 400 (Tex. Crim. App. [Panel Op.] 1983), "different weights should be assigned to different reasons" when analyzing this prong of the *Barker* test, *Barker*, 407 U.S. at 531. "Unjustifiable reasons for delay count towards the 'length of delay,' while justifiable reasons for delay do not." *Gonzales*, 435 S.W.3d at 810 (quoting *Barker*, 407 U.S. at 531–32). "A justifiable reason for delay in a complex white-collar case, for example, may not be a justifiable reason for delay in a

7

simple assault case." *Id.* Deliberate attempts to delay trial to hamper a defense are weighed heavily against the State. *Barker*, 407 U.S. at 531. "A more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

The record reflects that McDill contributed to the delay. The first adjudication hearing was set for nine months after the filing of the motion to adjudicate. There is a grace period initially to prepare for a case. *Shaw v. State*, 117 S.W.3d 883, 889–90 (Tex. Crim. App. 2003) ("In addition, the three-month interval between appellant's indictment and first trial may not be counted against the State, since the State was entitled to a reasonable period in which to prepare its case."). Without McDill's first failure to appear, the adjudication hearing would have occurred within an appropriate amount of time. Undoubtedly, when a trial court sets a hearing and a defendant fails to attend after proper notice, that is a direct cause of delaying the resolution of a prosecution and shows an intention of not truly wanting a speedy trial—especially more than once. The Texas Court of Criminal Appeals has determined that the period a defendant is "at large" "cannot fairly be charged against the State." *Davison v. State*, 510 S.W.2d 316, 319 (Tex. Crim. App. 1974).

Moreover, the record shows that the remaining delay was attributable to McDill's failure to report to community supervision, which weighs against him because it shows that McDill was attempting to evade the judicial process. *See State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing *Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennan, J., concurring)); *Wade v.*

*State*, 83 S.W.3d 835, 839 (Tex. App.—Texarkana 2002, no pet.) (the defendant's failure to report his location according to the terms and conditions of probation weighed against him); *Zamarripa v. State*, 573 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Therefore, McDill's inaction weighs against him.

However, the State also contributed to the delay. Even though McDill was arrested six times and bailed out five times, the arrests occurred in the same county where the motion to adjudicate was filed, and the record was silent as to whether the State made any attempts to locate McDill. *See Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976) ("It can therefore be seen that the burden of excusing the delay rests with the State and that in light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed."). There was no indication whether the State sought additional settings or the State attempted to locate McDill at any of the addresses listed on the bail bonds filed with the trial court. *See Gonzales*, 435 S.W.3d at 810 ("The [Texas] court of appeals reached this conclusion for the same reason the trial court did, but it also noted that this factor weighed against the State because Appellant's home address was known at all times by the State."). The addresses listed on the bail bonds always listed a local address. The silent record requires this Court to presume that the State was negligent in bringing McDill to trial. *Doggett*, 505 U.S. at 652–53 (finding that the State was negligent because it "made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes"). But an inference cannot be made that such inaction by the State was "deliberate or intentional." *Zamarripa*, 573 S.W.3d at 523.

9

Therefore, the State's negligence in locating McDill and failing to request additional settings in six years weighs in favor of McDill.

After considering the State's negligence and McDill's inactions, the second *Barker* factor weighs neutrally.

### C.      Assertion of the Right

Next, the burden is placed on McDill to timely "assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 528).  McDill waited six years to assert his speedy-trial right.  He argues that there was delay in asserting his right to a speedy trial because, even though he had appointed counsel, his appointed counsel did not file a notice of appearance or do anything on McDill's behalf for more than a year.[4]  However, the record reflects that McDill was represented continuously throughout the pendency of the prosecution since the trial court appointed an attorney immediately after each attorney withdrew.

Without a valid justification for McDill's delay, we are left with just analyzing a six-year delay in asserting the speedy-trial right.  Substantial delay weakens the argument, where the longer the delay, the more it looks like it was unpreserved.  *See Robinson v. State*, 470 S.W.2d 697, 699 (Tex. Crim. App. 1971).  Once asserted, the trial court resolved the case two days later.

---

[4]McDill argues that his second court-appointed counsel "never filed an appearance of counsel or otherwise acted on McDill's behalf," which, according to McDill, means he was unrepresented by counsel for one and a half years.  In support of his argument, McDill relies on the federal district court opinion in *Russell v. Denmark*, but we find McDill's reliance misguided.  *See Russell v. Denmark*, 528 F.Supp.3d 482, 498 (S.D. Miss. 2021) (orig. proceeding), *rev'd by* 68 F.4th 252 (5th Cir. 2023).  In *Russell*, the defendant notified the trial court that he had not spoken to an attorney even though the trial court had appointed an attorney to represent him.  *Id.* at 490.  Because Russell was incarcerated during the entire pretrial process, he relied on the public defender's office to meet with him.  The distinguishing factor is that Russell had no liberty to voluntarily meet with the court-appointed attorney because of his incarceration's restraint on his liberty.  Russell was reliant on the public defender's office to set time aside to meet him at the jail and was limited to pleading with the trial court for relief to make that happen.  Here, McDill was not incarcerated and was free to communicate with his counsel at any time.

*See Amos v. Thornton*, 646 F.3d 199, 207 (5th Cir. 2011) (per curiam).  McDill's "assertion was tardy, it was made only once, and trial occurred within a relatively short time thereafter."  *Kelly v. State*, 163 S.W.3d 722, 729 (Tex. Crim. App. 2005) (speedy-trial motion filed after a year was tardy).

Moreover, "[i]f a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure."  *Cantu*, 253 S.W.3d at 283. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."  *Id.*  McDill's speedy-trial motion merely alleged that dismissal was required since "[a] period of 7 years ha[d] passed since the case commenced," and the actions of McDill or his attorney did not cause the delay.  "The constitutional right is that of a speedy trial, not dismissal of the charges."  *Id.* at 281.

We find that the failure to pursue a speedy trial for six years until two days before the adjudication hearing without a valid justification weighs heavily against McDill, especially since the record shows that what he wanted was dismissal of the charges rather than a speedy trial.

**D.     Prejudice to the Accused**

The fourth *Barker* factor places the burden on McDill to prove a prima facie case of prejudice.  *Webb v. State*, 36 S.W.3d 164, 174 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).  Prejudice occasioned by the delay in proceeding to trial is assessed in the light of the three interests the right to a speedy trial was designed to protect:  (1) freedom from oppressive pretrial incarceration, (2) mitigation of the anxiety and concern on the part of the accused that accompanies a public accusation, and (3) avoidance of impairment to the defense of the charges.

11

*Barker*, 407 U.S. at 532. "Although the appellant need not show actual prejudice, he must make a *prima facie* showing of prejudice." *Webb*, 36 S.W.3d at 174. "The burden then shifts to the State to show that prejudice did not exceed that which occurs from the ordinary and inevitable delay." *Id.* The first two factors are not implicated here: McDill's pretrial incarceration was sixty days, and McDill could not have had anxiety or concern since he testified to a lack of knowledge that the motion to adjudicate was "hanging over [his] head."

Also, McDill argues that he is relieved of proving a prima facie case of prejudice because the record reflects "a presumption of prejudice." *Amos*, 646 F.3d at 208. However, the presumption of prejudice only concerns the third interest. *Dragoo*, 96 S.W.3d at 315 ("[W]ith respect to the third interest, affirmative proof of particularized prejudice is not essential to every speedy trial claim, because 'excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" (quoting *Doggett*, 505 U.S. at 655)). "In these instances, the reviewing court presumes that the lengthy delay adversely affected the defendant's ability to defend h[im]self." *Ritter*, 531 S.W.3d at 374–75. "On the other hand, this 'presumption of prejudice' is 'extenuated . . . by the defendant's acquiescence' in the delay." *Dragoo*, 96 S.W.3d at 315 (quoting *Doggett*, 505 U.S. at 658). The delay here was over six years, triggering the presumption of prejudice. *See Zamorano*, 84 S.W.3d at 654 (the delay was presumptively prejudicial because there was four years between arrest and trial). However, McDill's inactions—by failing to assert his speedy-trial right for six years even though he had notice of the filing of the motion to adjudicate and the scheduled hearings—extenuated the presumption of prejudice by a "longtime acquiescence in the delay." *Dragoo*, 96 S.W.3d at

12

315.  We find that McDill failed to demonstrate prejudice, and therefore, this factor weighs against McDill.

### E.     Balancing the Factors

"Having addressed the four *Barker* factors, we must now balance them."  *Id.* at 316. "Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated."  *Cantu*, 253 S.W.3d at 281.  "Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'"  *Id.* (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)).  "Thus, courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed."  *Id.*

Although the six-year delay and the State's negligence in the delay weighs in McDill's favor, all the other *Barker* considerations weigh against finding a violation of McDill's speedy-trial right.  We find that the weight of the factors, when balanced together, weighs against McDill and leads us to conclude that his right to a speedy trial was not violated.  As a result, we overrule McDill's sole point of error.

## IV.     Modification to the Judgment

"We have the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source."  *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) (citing *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim.

App. 1992)).  "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in [the] trial court; we may act sua sponte and may have a duty to do so."  *Id.* (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd); *French*, 830 S.W.2d at 609.  "The Texas Rules of Appellate Procedure also provide direct authority for this Court to modify the trial court's judgment."  *Id.* (citing TEX. R. APP. P. 43.2).

Under the section "Terms of Plea Bargain," the judgment states that McDill negotiated a plea agreement for "**2 YEARS CONFINEMENT STATE JAIL**."  According to the record, McDill did not agree on a plea bargain.  As a result, we modify the judgment by deleting "**2 YEARS CONFINEMENT STATE JAIL**" from the "Terms of Plea Bargain."

## V.    Conclusion

As modified, we affirm the trial court's judgment.


Charles van Cleef
Justice


Date Submitted:      October 1, 2024
Date Decided:        October 29, 2024

Do Not Publish

14